UNITED STATES of America,
Plaintiff-Appellee,

v.

John Vincent CIFARELLI, and Charles
William Ebeling, a/k/a Robert Ebeling,
a/k/a Bob Ebeling, Defendants-Appel-
lants.

No. 77–5812.

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1979.

Theodore J. Sakowitz, Federal Public De-
fender, Paul M. Korchin, Asst. Federal Pub-
lic Defender, Miami, Fla., for Cifarelli.

Geoffrey C. Fleck, Max B. Kogen, Miami, Fla., for Ebeling.

Jack V. Eskenazi, U. S. Atty., Alan J. Sobol, Jerome M. Feit, Attys., U.S. Dept. of Justice, Washington, D. C., Marty Steinberg, Sp. Atty., Dept. of Justice, Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, TUTTLE and HILL, Circuit Judges.

TUTTLE, Circuit Judge:

Appellants challenge their conviction of conspiracy to use extortionate means to collect extensions of credit, in violation of 18 U.S.C. § 894, and of obstruction of justice by testifying falsely before a grand jury, in violation of 18 U.S.C. § 1503. One appellant, Ebeling, also appeals from his conviction of using extortionate means to collect an extension of credit, in violation of 18 U.S.C. § 894.

## I. STATEMENT OF THE CASE

In August 1975, one Peter Melnick and two business partners Reed and Stroemer, opened a screen printing business named the "Squeegee." The following, month, Melnick borrowed $500 from appellant Cifarelli which he was to repay within the week on the terms of "six for five" (20 percent per week or 1040 percent per annum). Pursuant to this agreement, Melnick repaid the $600 to Cifarelli the following week. Late in September, Melnick asked for an additional loan of $2,500 from Cifarelli, who demurred until he was able to talk with his "associate or partner," appellant Ebeling. Ebeling was introduced to Melnick by Cifarelli at the latter's place of business, the Dade Office Supply Company. At that meeting, Ebeling agreed to lend Melnick $2,500 at the interest rate of "six for five," the loan to be repaid within a week. He gave Melnick $2,000 cash and the remaining $500 was delivered to him later in the day at the Dade Office Supply Company. Melnick was unable to repay the loan at the end of the week and, instead, sought another loan from Cifarelli in the amount of $10,000. The latter again stated that he would first have to consult with Ebeling. Thereafter, Ebeling met Melnick at the Squeegee and informed him that he "would have to check with [his] people in Hallandale," Florida. Several hours later, Ebeling returned to the Squeegee with the $10,000. Ebeling again told Melnick that the terms of the loan were "six for five" and that the loan had to be repaid within one week. Again, Melnick was unable to repay the money he had borrowed.

Thereafter, both Ebeling and Cifarelli repeatedly warned Melnick of the "serious consequences" that would result to him or his family if the loans were not repaid, stating also that the interest on the original loans would compound or multiply. Within a month, Ebeling informed Melnick that the principal and interest on the original debt had compounded to approximately $76,000. Melnick had some interest in an automobile distributorship, and for what he testified was a gesture of good faith, he provided Ebeling with the free use of a red Mark IV Lincoln Continental automobile. A short while later, Melnick gave Cifarelli a check for $10,000 with instructions to give the proceeds to Ebeling as a payment on the loans. On several other occasions, Melnick paid several hundred dollars to Ebeling personally for the weekly interest or "vigorish" (excess interest) charge.

Thereafter, Melnick and Ebeling frequently met to discuss further payment and Cifarelli became the president of the Squeegee business for the purpose, in his words, of "protect[ing] his interest in [the] loan and represent[ing] the people from whom the money had come." Melnick's delinquency on the loans and repeated threats by the appellants to Melnick and his family became the source of several conversations at the Squeegee during the next months. On one of these occasions, Ebeling attempted to punch Melnick and caught him by the throat. On another occasion in December, Ebeling and Cifarelli drove after Melnick's car and forced him to the side of the road

and Ebeling pistol whipped Melnick with a .32 caliber pistol, threatening Melnick that he better pay "or else."

After FBI surveillance had commenced, Cifarelli stated to the case agent that he would kill Melnick if he could not collect the debt. Witness Reed, Melnick's partner, had one conversation with Ebeling at which time the latter stated "I have been chasing [Melnick] and wasting my time. I got a good idea to take his wife out in the Everglades and dump her."

The foregoing statement of the case is based on the evidence which the jury could find to be true, including evidence in the form of intercepted telephone conversations as to which the parties both challenge the legality of the electronic interceptions. Part of the evidence came in without objection from consensual interceptions and body tapes.

## II. LEGALITY OF THE ELECTRONIC SURVEILLANCE ORDERS

There were three separate orders of the district court authorizing the challenged electronic interception of loan shark related conversations: that relating to conversations of "John Cifarelli, Robert 'Bob' Ebeling, and others as yet unknown" conducted over the target phone, which was the telephone at the office of Dade Office Supply Company; the order extending the authorization for an additional 20 day period; and that authorizing electronic interception of similar conversations for the same 20 day period on the telephone, 822–8030, at Ebeling's home.

### A. Probable Cause

■ One of the requirements for the issuance of a wiretap authorization is that the evidence presented to the judge must enable him to "determine on the basis of the facts submitted by the applicant that—(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter." 18 U.S.C. § 2518(3)(a). The appellants contend that no probable cause was set forth in the affidavit of the FBI agent presented to the trial judge. This contention borders on the frivolous. The trial judge's order authorizing the interception was supported by a lengthy affidavit by FBI Agent Styles. The affidavit in turn was based on statements made by Melnick, the alleged victim of the offense; by a business partner whose separate statement corroborated much of the information supplied by Melnick; and admissions by Cifarelli which were also corroborative of many of the details necessary to support the order. Statements from two confidential informers further bolstered the Styles affidavit, as did an intercepted conversation between Melnick and Ebeling, resulting from a consensual body tape recording placed on Melnick. This conversation disclosed extensive participation by the appellant in loansharking activities, the details of which closely corresponded to the information supplied by the other persons. The affidavit also contained FBI investigatory and surveillance information regarding appellants and identification of the place of business which, according to telephone records, had only one telephone listed, bearing the number 305–822–5172. We thus do not have an affidavit based solely on information provided by an unidentified informer as to which the Supreme Court has carefully delineated standards for determining the informer's reliability in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

Melnick is not an unidentified informer. He is the alleged victim who, under criminal sanctions, see 18 U.S.C. § 1001, gave a statement to the FBI. In United States v. Bell, 457 F.2d 1231, 1238 (5th Cir. 1972), we stated as to the Aguilar-Spinelli requirements: "[W]e have discovered no case that extends this requirement to the identified bystander or victim-eyewitness to a crime, and we now hold that no such requirement need be met."

Moreover, as already indicated, there was ample other independent support for the affidavit, part of which included statements made by one of the accused himself.

The second wiretap authorization, for an additional 20 days, was equally well supported by the showing that wiretap information received under the outstanding authorization showed the existence of a conspiracy involving certain identified individuals, and also revealed what appeared from the wiretaps to be a larger organization involving others who were not yet identified, which information might be available during the extended period.

Finally, we find Ebeling's challenge of the authorization to tap his residence phone number 822–8030 is unavailing. In his attack on this order, Ebeling does not seriously challenge the fact that there was an adequate showing by the affidavit that loansharking activities were being carried on from at least one of the two telephones in Ebeling's home. The gist of his claim here is that there was not sufficient information supplied in the affidavit as to the actual use of the particular phone that was actually tapped. We do not reach the question whether, when an affidavit in support of an authorization order clearly demonstrates that in a residence having two telephones there is active and frequent use of one of the telephones for the carrying out of the illegal act, it is necessary for the affidavit to identify which of the two instruments has been used. We conclude that there was sufficient information in the affidavit to identify the phone number 822–8030 for the purpose of the order.

### B. Adequacy of Affidavit as to Inadequacy of Other Investigative Procedures

Title 18 U.S.C. § 2518(1)(c) requires that an application for a wiretap order include, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."

This court has interpreted section 2518(1)(c) in United States v. McCoy, 539 F.2d 1050, 1055–1056 (5th Cir. 1976), cert. denied 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230 (1977). There, we said:

We observed in United States v. Robertson, 5 Cir. 1974, 504 F.2d 289, cert. denied, 421 U.S. 913, 95 S.Ct. 1568, 43 L.Ed.2d 778, that the statutory requirement 'must be read in a common sense fashion.' Accord, United States v. Cacace, 5 Cir. 1976, 529 F.2d 1167; United States v. Armocida, 3 Cir. 1975, 515 F.2d 29, 37, cert. denied, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84; 1968 U.S.Code Cong. & Ad.News 2190 (S.Rep.1097, section-by-section analysis of statute). Common sense dictates that the purpose of the statute 'is not to foreclose electronic surveillance until every other imaginable method of investigation had been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques.' United States v. Pacheco, 5 Cir. 1974, 489 F.2d 554, 566, see United States v. Smith, 9 Cir. 1975, 519 F.2d 516, 518. In order to uphold the wiretap order, all that need be found in the affidavit is a 'factual predicate.' Armocida, 515 F.2d at 38.

539 F.2d at 1055.

The affidavit upon which the trial judge issued the authorization in this case is a more adequate factual predicate for the judge's finding that "other investigative procedures . . . appear unlikely to succeed" than the affidavit reported in McCoy, supra. We consider it entirely adequate, and therefore conclude that the trial court did not err in refusing to suppress the results from the interceptions.

### III. EBELING'S RIGHT OF CONFRONTATION CLAIM

Appellant Ebeling contends that the admission into evidence of a statement made by his codefendant Cifarelli and the admission into evidence of a part of Cifarelli's grand jury testimony violated his Sixth Amendment right of confrontation under the teaching of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Cifarelli did not testify at the trial, and therefore Ebeling had no opportunity to cross-examine him as to the matters referred to in the two statements.

During an interview with Cifarelli conducted by an FBI agent, Cifarelli admitted acting as a participant in arranging a loan for $12,500 at an interest rate of 1040 percent per annum between Melnick and people whom Cifarelli declined to identify other than by describing them as "violence prone individuals who loaned money to high risk clients." He further stated that because of Melnick's failure to pay off the loan, he had taken over Melnick's business to "put the appropriate pressure on Melnick" to repay the loan. During the same interview he stated that he would kill Melnick unless the latter repaid the loan.[1] Counsel moved to sever Ebeling's case or in the alternative for a mistrial. He declined to request a special instruction to the jury to the effect that whatever Cifarelli had said was evidence only against him and not Ebeling. These motions were based upon the Supreme Court's *Bruton* decision. That case dealt with the question whether a careful and accurate charge to the jury to disregard a codefendant's extrajudicial statement except as to him alone, could adequately protect the interest of the party against whom the statement was pure hearsay. In dealing with the question, the Court was considering whether it should overrule *Delli Paoli v. United States,* 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), in which it held that it is "reasonably possible for the jury to follow" sufficiently clear instructions to disregard the confessor's extra-judicial statement that his codefendants participated with him in committing the crime. 352 U.S. at 239, 77 S.Ct. at 299. The Court's opinion in *Bruton* quoted from the Solicitor General's statement agreeing that the judgment below should be reversed, in which it was said: "the other evidence against [petitioner] is not strong." 391 U.S. 126, 88 S.Ct. 1622.

The Court then said:
[It] is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information. Nevertheless, as was recognized in *Jackson v. Denno* [378 U.S. 368, 84 L.Ed. 1774, 12 L.Ed.2d 908] *supra,* there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. [citations omitted] Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial.
391 U.S. 135, 136, 88 S.Ct. 1627, 1628.

Although nothing in Cifarelli's statement implicated Ebeling by name, appellant contends that other evidence introduced at trial, shows clearly that he was the person who supplied the $12,500 loan and that he was thus identified as clearly as if his name had been used.

We assume that this was sufficient identification of Ebeling to bring into play the *Bruton* rule, if in fact this can be a "powerfully incriminating extrajudicial statement[s]" which was "deliberately spread before the jury in a joint trial" and unless the record here demonstrates that the admission of the statement was harmless beyond a reasonable doubt.

We have stated substantially the nature of the very damning evidence, much of it out of the mouths of the appellants themselves, which indisputably establishes the existence of the crime and the participation

1. The agent's testimony includes the following: "Mr. Cifarelli continued in a rather agitated state about the situation with Mr. Melnick and his failure to repay the money. He indicated that he was going to get the money, one way or the other, and he would kill Mr. Melnick unless it was paid. He said that he would rather deal with the federal government than with the people from whom the money had come because all we could do was put him in jail and they would be able to put him under the ground.

He further said that he would deny saying this because, if Melnick was found in the canal, he didn't want the agents coming back to see him about it."

of the two appellants in it. Nothing was stated in this extrajudicial comment by Cifarelli that was not fully treated by other witnesses at the trial. This raises the question, first, whether under these circumstances, the Cifarelli statement is in fact "powerfully incriminating," especially since its identification with Ebeling is somewhat attenuated. The clearer basis, however, for rejecting the *Bruton* claim by appellant is our determination that on the record before us, the introduction of this statement under circumstances that made it impossible for Ebeling to cross-examine the declarant, if error, was harmless beyond a reasonable doubt. We fully recognize the danger of too readily ignoring error, especially of constitutional dimensions, as "harmless," but we find that the Supreme Court in *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1968) has led the way in a case dealing with a *Bruton* violation. As did the Court in *Harrington,* we note that "our decision is based on the evidence in this record. The case against [Ebeling] was not woven from circumstantial evidence. It is so overwhelming that unless we say that no violation of *Bruton* can constitute harmless error, we must leave this [federal] conviction undisturbed." 395 U.S. 254, 89 S.Ct. 1729.

## IV. OTHER CHALLENGED EVIDENCE

Bearing in mind the general rule that the trial court is afforded broad discretion in passing on questions of admissibility of evidence, *United States v. Pearson,* 508 F.2d 595 (5th Cir. 1975); *United States v. Pentado,* 463 F.2d 355 (5th Cir. 1972), we consider two additional contentions that the trial court improperly admitted evidence prejudicial to the appellants.

### A. *Prior Consistent Statements of Government Witness*

During the cross examination of Melnick, the alleged victim of the loanshark operation, defense counsel undertook to show that he had made inconsistent statements and also that at the time of the giving of his testimony he had a motive for fabricating his statement. The govern-

ment, in rebuttal, put in evidence a prior consistent statement in the form of Melnick's testimony before a grand jury. In response to an objection to the evidence as hearsay, the government relies on Fed.R. Evid. 801(d), which states: "A statement is not hearsay if—(1) . . . (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . . . ."

Appellants argue that the record discloses that Melnick's testimony before the grand jury, while consistent with his trial testimony, was given when he was under pressure to cooperate with the government, and not at a time predating any reason to fabricate. This court has not previously limited the application of Rule 801(d)(1)(B) to those cases in which it was shown that the prior consistent statement antedated any occurrence or fact giving rise to the possibility of a fabrication or the existence of improper influence or motive. This theory has been expressly rejected by the Court of Appeals for the Eighth Circuit in *United States v. Scholle,* 553 F.2d 1109 (8th Cir. 1977), in which the court said: "This court has rejected the proposition that to be admissible prior consistent statements must have been made prior to the impeaching statements, noting that 'this seems an unnecessary refinement,' *Hanger v. United States* [398 F.2d 91, 8th Cir. 1968]. . . . ." 553 F.2d at 1122.

We need not decide this precise question, because as previously indicated in discussing other evidence, the evidence from which the jury could find the guilt of these appellants was so overwhelming that we conclude that if error was committed by the trial court, such error was harmless beyond reasonable doubt.

### B. *Two Handguns Seized Under Search Warrant for the Dade Office Supply Company*

Cifarelli alone contends that the trial court erred in admitting into evidence two handguns which were seized during a search of the premises of his Dade Office Supply Company pursuant to an admittedly

valid search warrant. He contends that since there was no evidence adduced during the trial that he used or carried the weapons, they were irrelevant and thus inadmissible against him.

A review of the evidence showing Cifarelli's own statement that he would kill Melnick if he did not pay the debt, his repeated statements that the persons supplying the money which he loaned to Melnick were violent persons, and the telephone conversations between Cifarelli and Ebeling clearly threatening violence toward Melnick demonstrate the correctness of the trial court's ruling on the admissibility of this evidence. *United States v. Pearson, supra.*

The judgments are AFFIRMED.