Bennie E. DEMPS, Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, etc.,
Respondent-Appellee.

No. 80–5611.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Jan. 22, 1982.

Rehearing Denied Feb. 23, 1982.

Jeffrey Garmel, Brookline, Mass., for petitioner-appellant.

Miguel A. Olivella, Jr., Asst. Atty. Gen., Tallahassee, Fla., for respondent-appellee.

Before RONEY, KRAVITCH and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Petitioner, Bennie E. Demps, appeals from the district court's denial of habeas corpus relief, 28 U.S.C.A. § 2254. Demps and his co-defendant, Jackie Hardie, were convicted of two counts of first degree murder before a Florida state court and were sentenced to death. Their death sentences were reduced to life sentences by the Supreme Court of Florida, but their convictions were otherwise affirmed. *Demps v. State*, 272 So.2d 803 (Fla.1973). Although petitioner alleged several grounds for relief in the district court,[1] he asserts only two

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

1. Demps also raised the following issues in the district court: (1) He was denied proper consideration of his mental competency because law enforcement officers remained present during the psychiatrist's examination; (2) He alleged

that the search of his automobile at the time of his arrest in New Jersey violated the Fourth Amendment; (3) He alleged that the prosecutors failed to give him notice of foreign law (of New Jersey) on which they intended to rely to support the legality of the search; (4) He alleged that there was not sufficient evidence of his guilt; and (5) He complained that the eye-

grounds on appeal: (1) that the prosecution's use of a deposition at trial violated his Sixth Amendment right to confront the witness, and (2) that the trial court abused its discretion by refusing to sever his trial from Hardie's. Both the magistrate and the district court concluded that any Confrontation Clause error was harmless beyond a reasonable doubt, and that the denial of severance was not error. We agree and affirm.

The material facts are succinctly set forth in the district court's opinion of March 31, 1980:

> Petitioner was tried along with a co-defendant, Jackie Hardie, who was also found guilty of the three felony charges. The criminal episode began in Central Florida near Orlando when petitioner and Hardie stole an automobile owned by L.B. West. Two days later a home near Mt. Dora, Florida, was burglarized and a safe, a pistol, and an automatic rifle were taken. On the afternoon of the burglary, a Mr. Nicholaw Puhlick and his wife, along with a Mr. Robert Brinkworth, a real estate salesman, were viewing an orange grove near Eustis, Florida. As they came to the end of the grove they were confronted by two men armed with a pistol and automatic rifle who proceeded to rob them. During this assault, Mrs. Puhlick was shot in the abdomen and all three were forced to climb into the trunk of Mr. Brinkworth's car. With the trunk lid closed, several rounds of shot were fired into the rear of the car, ultimately causing the death of Mrs. Puhlick and Mr. Brinkworth. Although Mr. Puhlick was wounded, he survived and testified at trial to the identity of the two assailants.

> Several days after the murders, petitioner, Hardie, and a female named Terri Robinson were stopped in New Jersey by a state highway patrolman on a traffic violation. They were driving the car stolen from Mr. West and upon searching the car, the trooper discovered *inter alia* a pistol and an automatic rifle. Petitioner and Hardie were then placed under arrest and eventually returned to Florida to face the charges for which they were tried and convicted.

(Record on Appeal at 33–34).

## I.

During the trial, Demps took the stand and denied any participation in the homicides. On cross-examination, the prosecutor impeached Demps with the deposition of Terri Robinson, the traveling companion, who had testified in that deposition that Demps admitted to her that he had killed the victims. Over objection, the prosecutor had Demps read aloud portions of Robinson's deposition testimony.[2] Although Robinson was present at trial and actually sworn as a witness at the beginning of the trial, she was never called to the stand by either the prosecutor or Demps. Demps asserts that the use of the deposition deprived him of his Sixth Amendment right to confront witnesses against him.[3]

witness' in-court identification of him was tainted by a previous encounter. The district court ruled against Demps on all of these issues except the final one upon which it did not rule because it had not been presented to a state court. The court found it unnecessary to dismiss the entire petition for failure to exhaust state remedies because it was thrown in as an afterthought. Even if this should be considered a mixed petition, because the district court reached the merits of the exhausted claims, we will review same on appeal. *Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir. 1978).

**2.** Although acknowledging that Demps was required to *read* the deposition, the State argues that the prosecution did not ask Demps to read the deposition *aloud*. However, we think it is clear that Demps' attorney objected to the reading aloud of the deposition, but the court and the prosecution allowed him to do so over objection.

**3.** In *Harris v. Spears*, 606 F.2d 639 (5th Cir. 1979), we faced a similar situation. There, the prosecutor, on cross-examination of the defendant, asked questions which suggested that the defendant's son had made out-of-court statements inconsistent with defendant's testimony. We held that the failure of the prosecution to call the defendant's son as a witness deprived the cross-examination of an appropriate evidentiary foundation, and deprived defendant of his constitutional right to confront and cross-examine the witness. Two factors distinguish the instant case from *Harris*: (1)

Because we conclude that the admission of Robinson's deposition testimony was harmless beyond reasonable doubt, we need not decide whether the Confrontation Clause is satisfied when a criminal accused has the opportunity, and in fact takes advantage of the opportunity, to confront and cross-examine the witness at a pre-trial deposition, and when the witness is present and available and sworn as a witness at trial though not called as a witness by either party.[4] We assume *arguendo* a violation of the Confrontation Clause, and hold that the same was harmless beyond reasonable doubt under all the facts of this case.

■ It is established that a violation of the Confrontation Clause can be harmless error. *United States v. Cifarelli*, 589 F.2d 180 (5th Cir. 1979). In our recent en banc decision, *Harryman v. Estelle*, 616 F.2d 870 (5th Cir.), *cert. denied*, 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980), we set forth the test to be applied in ascertaining whether constitutional error is harmless:

[T]he question of whether or not a constitutional error was harmless cannot be answered by considering the error in isolation. As the Court stated in *Fahy*, "it is necessary to review the facts of the case and the evidence adduced at trial" to determine the effect of the unlawfully admitted evidence "upon the other evidence adduced at trial and upon the conduct of the defense." [*Fahy v. State of Conn.*] 375 U.S. [85] at 87, 84 S.Ct. [229] at 230, 231 [11 L.Ed.2d 171]. A court

must then decide whether, absent the so-determined unconstitutional effect, the evidence remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt.

616 F.2d at 876 (footnote omitted).

■ We are satisfied that the limited use of the Robinson deposition was harmless beyond reasonable doubt. Mr. Puhlick, an eyewitness and one of the victims who survived, identified Demps as the gunman. His identification was positive.[5] He observed Demps for an extended time (fifteen to twenty minutes) in the broad daylight, with Demps standing at close range. Mr. Puhlick and his wife and Mr. Brinkworth were standing near the trunk of the car and being held at gunpoint by Demps and Hardie. Mr. Puhlick watched while Demps shot his wife in the stomach with a pistol. Mr. Puhlick's testimony that he had a vivid picture of Demps in his mind is forceful, and the jury obviously believed him. Demps was arrested while driving the car which was present at the scene of the crime. Two weapons, which were found in the car at the time of Demps' arrest, were shown by ballistics tests to be the murder weapons. Also found in the car was a tire iron which was shown to have been used to open a safe which was found at the murder scene.

The evidence in Demps' favor was his own alibi story that he loaned the car at the

here Demps did cross-examine Robinson at the pretrial deposition, whereas in *Harris* there was no opportunity for the defendant to cross-examine his son at the time of the out-of-court statements; and (2) in the instant case Robinson was present at trial and actually sworn as a witness at the beginning of the trial, whereas in *Harris* there is no indication that the declarant was available as a witness at trial.

4. In considering whether confrontation and cross-examination at a preliminary hearing satisfies the Confrontation Clause when the declarant is unavailable at trial, the Supreme Court in *Ohio v. Roberts*, 448 U.S. 56, 70, 100 S.Ct. 2531, 2541, 65 L.Ed.2d 597 (1980), expressly found it unnecessary to decide whether the *opportunity* to cross-examine, as contrasted with actual cross-examination, was sufficient.

5. On cross-examination, Mr. Puhlick was asked: "Are you positive it was Mr. Demps?" He answered: "That's right. I dream of him at night, for four months." (State trial transcript, p. 1458). In further cross-examination concerning his identification of Demps, the following questions and answers occurred:

Q. Mr. Puhlick, are you certain that is the same man?
A. Positively certain!
Q. How can you be certain, sir?
A. When you go through what I did, you remember a face for the rest of your life, Mister! And I'm telling you you will!
(State trial transcript, p. 1459).

crucial time to co-defendant Hardie and to one Curtis Red. However, Demps' testimony with respect to Curtis Red was totally implausible. He did not know Red well, did not know where he lived, and Demps' testimony concerning Red's disappearance during their trip north was implausible. Demps testified that Red simply left without any explanation to Demps or Hardie when the three stopped for supper in a little town in South Carolina, the name of which Demps could not remember. Furthermore, Demps described Curtis Red as having a distinguishable afro which one would not forget, which makes it unlikely that Mr. Puhlick's identification of Demps was mistaken. Finally, co-defendant Hardie testified that Demps was lying about the existence of Curtis Red. On cross-examination, Demps admitted that, in order to believe his testimony, the jury would have to conclude that eight prosecution witnesses were lying. We conclude that Demps' alibi was so implausible that it does not affect our conclusion that the evidence against Demps was overwhelming. *Cf. Chapman v. United States*, 547 F.2d 1240 (5th Cir.), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977).

Similarly, Hardie's testimony that he acted alone in killing Mrs. Puhlick and Mr. Brinkworth and wounding Mr. Puhlick is totally implausible and does not affect our conviction that the evidence against Demps is overwhelming. Hardie's testimony was internally inconsistent in important respects and of course is flatly contradicted by Mr. Puhlick's forceful testimony.

In addition to the overwhelming evidence of guilt, it is significant that the deposition excerpts did not consume much time in a lengthy trial and that the prosecution did not mention Robinson's testimony in its closing arguments.

Assuming a constitutional error, we conclude that it was harmless beyond a reasonable doubt.

## II.

■ Demps also claims that the trial court's refusal to sever his trial from that of his co-defendant Hardie constitutes a ground for habeas relief. We do not agree. Under Florida law, as well as federal law, the refusal to grant a severance will be reversed only where the trial court has abused its discretion. *See United States v. Berkowitz*, 662 F.2d 1127 (5th Cir. 1981); *Alvarez v. Wainwright*, 607 F.2d 683 (5th Cir. 1979). In order to justify relief under 28 U.S.C.A. § 2254, Demps must show that the refusal to sever rendered his state trial fundamentally unfair and violative of due process. *Alvarez v. Wainwright, supra.* Prior to trial, Demps urged severance because there was more evidence against Hardie than against him. Specifically, only Hardie's fingerprint was found at the scene of the crime. Several other motions to sever were made during the trial. Although Hardie testified that Demps had nothing to do with the homicides, Hardie's attorney argued to the jury that Hardie was only sixteen years old and impressionable and that Demps was the ring leader who led Hardie astray. We do not believe that the quantum of evidence against Hardie is greater or more damaging than the evidence against Demps; we do not perceive any transference of guilt from Hardie to Demps. *See United States v. Heinlein*, 490 F.2d 725, 737 (D.C.Cir.1973). As we have said, the evidence of Demps' guilt was overwhelming. Furthermore, we do not believe that Hardie's and Demps' defenses were so irreconcilable or inconsistent as to require severance. In fact, Hardie testified in favor of Demps, and though Hardie's attorney attempted to cast the blame on Demps, the trial court correctly instructed the jury that his arguments were not evidence. Accordingly, we do not believe that the refusal to sever rendered Demps' trial fundamentally unfair.

AFFIRMED.