447 So.2d 253 (1983)
Raul MOLINA, Appellant,
v.
The STATE of Florida, Appellee.
No. 82-870.
District Court of Appeal of Florida, Third District.
October 4, 1983.
*254 Bennett H. Brummer, Public Defender, and Elliot H. Scherker, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and William P. Thomas, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and NESBITT and DANIEL S. PEARSON, JJ.
NESBITT, Judge.
In the first appearance of this case, we reversed the defendant's conviction because the investigating officers stated that after interviewing two non-testifying co-defendants they arrested Molina and placed his picture in a photo lineup for identification by the victim. Molina v. State, 406 So.2d 57 (Fla. 3d DCA 1981). Relying upon our prior decision in Postell v. State, 398 So.2d 851 (Fla. 3d DCA 1981), pet. for review denied, 411 So.2d 384 (Fla. 1981), this court held that that testimony inferred an identification of defendant by the co-defendants and was therefore impermissible. Because the only other evidence against Molina was a severely challengeable eyewitness identification by the victim, the court found the error to be harmful.
It appears that our previous decision was in vain because, on re-trial, the same prosecutor asked the same witness about his contact with the co-defendant, but used the word "meet" rather than "speak" in making this inquiry. The defendant promptly moved for a mistrial and, in the ensuing argument thereon, the state represented to the court that it would introduce an inculpatory statement by the defendant which had not been available at the first trial. Accordingly, the trial judge ruled that *255 there was error but found it to be harmless.
The state concedes that there was error created by the prosecutor's question and thus the only issue is whether this error requires a second new trial. The admission which the state relies on in support of a harmless error theory was one made to the corrections officer in broken English in which Molina allegedly stated that the eyewitness could not have identified him because he had a mask over his face. On cross-examination, however, the officer indicated that the defendant had difficulty comprehending and speaking English. Thus, while at first glance the inculpatory statement would seem to provide overwhelming evidence of guilt, on closer examination, we are not satisfied beyond a reasonable doubt that the error did not contribute to a conviction. For this reason, we find that a new trial is required. Tacoronte v. State, 419 So.2d 789 (Fla. 3d DCA 1982).
We will not elaborate further on the prosecutor's behavior in the present case other than to state that, true to our promise in Jackson v. State, 421 So.2d 15 (Fla. 3d DCA 1982), we direct the Florida Bar Grievance Committee's attention to this matter.
The defendant's conviction must once again be reversed and remanded  this time, hopefully for a fair trial.
DANIEL S. PEARSON, Judge, concurring.
I do think it necessary to elaborate further on the prosecutor's behavior in the present case, lest it appear to anyone that his conduct is attributable to inadvertence or ignorance and that he is an unfortunate early victim of our recently announced policy of invoking disciplinary procedures in appropriate cases. See Jackson v. State, 421 So.2d 15 (Fla. 3d DCA 1982).
It quite clearly appears from this record that the prosecutor deliberately set about to circumvent our holdings in Molina v. State, 406 So.2d 57 (Fla. 3d DCA 1981), and Postell v. State, 398 So.2d 851 (Fla. 3d DCA 1981), rev. denied, 411 So.2d 384 (Fla. 1981), by asking the witness whether he met with rather than spoke with the co-defendants before arresting Molina. If I were convinced that the distinction between met with and spoke with was even arguably more than semantic (that is, that the prosecutor could hold a reasonable belief that a jury would not infer that the co-defendants had implicated Molina when they heard that the officer met with the co-defendants and then went out to arrest Molina), I might conclude that this prosecutor suffers from a terminal case of literalism and might not find his conduct to be deserving of referral to the Florida Bar Grievance Committee. However, there are two things which convince me that the prosecutor was fully aware that the testimony of met with was as inadmissible as spoke with and that he set about to place it before the jury anyway.
First, the prosecutor evidently had carefully noted that in both Molina and Postell, we reversed the convictions only after finding that the error was harmful in light of the insubstantial other evidence in the case. Armed now with what he thought to be substantial other evidence, that is, the defendant's inculpatory statement to the corrections officer, the prosecutor elicited the offensive testimony fully prepared to argue that its admission was harmless error in light of the defendant's inculpatory statement. But when we say that something is error, whether we call it harmful or harmless affects only the outcome of the case being reviewed. Merely because error can be rendered harmless because of other evidence, it is error nonetheless. Although a conviction in a strong case may be affirmed on a harmless error theory, that is not an invitation to prosecutors to commit the error and does not in any way affect their obligation to avoid deliberately eliciting inadmissible testimony in order to further tip the scales against the defendant.
Second, a distinct and separate, but remarkably parallel, trial incident further *256 convinces me that the prosecutor's behavior was disingenuous. Molina had not testified in his first trial nor made any post-arrest statements. He did, however, testify at his retrial, stating in essence that at the time of the crime he was playing pool in a bar. On cross-examination, the prosecutor asked Molina:
"Isn't it a fact, Mr. Molina, that the very first time we have heard about you being in a bar playing pool, drinking and speaking to some lady, who is a niece of the bar owner, in all of the three years [since your arrest] including an entire jury trial .. . is right here today, that's the first time we've heard about it?"
Defense counsel objected and moved for a mistrial before the question was answered. After the motion was denied, the prosecutor stated:
"Wait a minute, Judge. We need an answer to that question, but we have no further questions?"
A moment later he said:
"In fact, Judge, I'm going to strike the question. We don't need an answer to it."
It is crystal clear that this questioning, whether it related to the defendant's silence after his arrest or at the time of his first trial, was calculated to bring forth an impermissible comment on the defendant's right to remain silent. See Simpson v. State, 418 So.2d 984 (Fla. 1982) (questioning of defendant concerning his failure to testify before the grand jury investigating the crime); Willinsky v. State, 360 So.2d 760 (Fla. 1978) (questioning of defendant concerning his failure to testify at preliminary hearing); Cooper v. State, 413 So.2d 1244 (Fla. 1st DCA 1982), rev. denied, 421 So.2d 518 (Fla. 1982) (questioning of defendant concerning his silence at prior trial); Weiss v. State, 341 So.2d 528 (Fla. 3d DCA 1977) (questioning of defendant concerning his failure to give exculpatory explanation at any time prior to his trial testimony). See also Lee v. State, 422 So.2d 928 (Fla. 3d DCA 1982). Had the defendant, over his objection, been compelled to admit to his prior silence, automatic reversal of his conviction would have been required. See, e.g., Simpson v. State, 418 So.2d 984; Clark v. State, 363 So.2d 331 (Fla. 1978); Willinsky v. State, 360 So.2d 760; Bennett v. State, 316 So.2d 41 (Fla. 1975); Rojas v. State, 412 So.2d 71 (Fla. 3d DCA 1982); Peterson v. State, 405 So.2d 997 (Fla. 3d DCA 1981); Barnes v. State, 375 So.2d 40 (Fla. 3d DCA 1979). Because these propositions are so clear, I am convinced that this experienced prosecutor fully expected that his question would be objected to, the objection would be sustained, and no answer from the defendant would be forthcoming. Even worse is that the prosecutor was prepared to defend the propriety of asking a question which he knew could not be answered without causing a mistrial by asserting that since it was not answered no error occurred. This time he relied on Monroe v. State, 396 So.2d 241, 242 (Fla. 3d DCA 1981), modified on other grounds, 406 So.2d 1115 (Fla. 1981), where this court held that no error is committed where such a question goes unanswered, since no inference can be drawn that the defendant would have answered one way or the other.[1] But we also said in Monroe that "we do not commend the prosecutor's question of the defendant," the design of which, although frustrated by lack of answer, was to elicit an answer which would prejudice the defendant. Id. at 243-44.
Thus, as I see it, the prosecutor consistently tried to get before the jury matters which he knew or should have known they were not entitled to receive. Even had their receipt ultimately proved to be harmless error, the prosecutor's conduct was inexcusable.
SCHWARTZ, C.J., concurs in the opinions of both Judge NESBITT and Judge PEARSON.
NOTES
[1] I think Monroe is clearly distinguishable, because here the prosecutor commented: "We don't need an answer to it." That comment itself suggests that the defendant's answer would have been that this is the first time he told this story and would therefore be a comment on the defendant's prior silence.