**Carlton HARRIS, # 079919,**
**Petitioner-Appellee,**

v.

**Louie L. WAINWRIGHT,**
**Respondent-Appellant.**

No. 84–5377.

United States Court of Appeals,
Eleventh Circuit.

May 20, 1985.

---

James C. Hill, Circuit Judge, dissented and filed opinion.

Jim Smith, Atty. Gen., Tallahassee, Fla., Michael J. Neimand, Asst. Atty. Gen., Dept. of Legal Affairs, Miami, Fla., for respondent-appellant.

Joel Hirschhorn, Miami, Fla., for petitioner-appellee.

Before GODBOLD, Chief Judge, HILL, Circuit Judge, and PECK *, Senior Circuit Judge.

GODBOLD, Chief Judge:

The district court granted habeas corpus to the petitioner, a Florida state prisoner, because at petitioner's trial the court admitted hearsay testimony into evidence, over proper objection, which violated petitioner's constitutional right to confront the witnesses against him under the Sixth Amendment as made applicable to the states through the Fourteenth Amendment. We agree with the district court and affirm.

The significant events are undisputed. Fulgencio Padilla, Sr. and his son, Fulgencio Padilla, Jr., closed their business at approximately 5:30 p.m., entered their vehicle and prepared to drive away. Padilla, Sr. sat on the driver's side. Before they were able to leave, a black man appeared on the driver's side and demanded money at gunpoint. Padilla, Sr. refused. The man shot him and fled to a yellow Cadillac. Padilla, Sr. asked his son to get the license number of the Cadillac. When the son attempted to do so, the assailant fired at him. The Cadillac left the scene and the Padillas gave chase, ramming the Cadillac when it became mired in traffic. Three men exited the Cadillac and fled on foot. Padilla, Sr. was hospitalized.

The hearsay testimony in question had a double impact. It bolstered uncorroborated identification testimony given by the Padillas and, independently of the identification testimony, tended to connect petitioner with the crime through his connection with the yellow Cadillac. The testimony was brought in as an explanation of why an investigating officer prepared a photographic lineup that included petitioner's picture, a purpose for which the testimony was not even necessary.

* Honorable John W. Peck, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

During the testimony at trial of Officer Jaeger, a Miami police officer assigned to investigate the shooting, the prosecution asked:

Q. Did you receive any information concerning the ownership of a Cadillac?

An objection was made based upon hearsay, and a side bar conference ensued. Defense counsel insisted that the question inferred that petitioner owned the car. The prosecution responded:

It's not hearsay. We are not asking where he got it from or who he got it from. It is did he receive the information.

The defense resumed its objection, noting that the prosecution was attempting to get in evidence about the testimony of someone not present. The court overruled the objection.

In the presence of the jury the prosecution restated the question, eliminating reference to ownership but adding reference to the Cadillac's being involved in the robbery:

Q. Did you receive information about a yellow Cadillac involved in an armed robbery in Miami, Dade County, Florida?

A. Yes, sir, I did.

Q. Based on that, what did you do?

A side bar followed at which the defense renewed its objection that the questioning raised an inference that petitioner was identified by someone else, or the car was identified by some other person or through some other source. The defense's motion for a mistrial was overruled. The defense asked for a ruling on the follow-up question: "Based on that, what did you do?" The prosecution stated that it would rephrase the question, but the trial court cautioned the prosecution to proceed carefully and specifically noted: "Let me tell you. I don't want him [Jaeger] to testify

that he had a picture of the Defendant." One of the prosecutors responded: We'll not go that far."

Proceedings before the jury resumed as follows:

Q. The next question is, what did you do then?

·A. Compiled a photographic line-up at PSD.

The lineup was marked for identification, and Jaeger then testified:

A. This is my writing. These are the photographs that I compiled based on the information that I received.

The photographic lineup was composed of six black males. Included was a photograph of petitioner.[1] Testimony at trial brought out that the lineup was shown to Padilla, Jr. at the hospital within an hour of the shooting, and he identified one of persons displayed as the assailant. Later, some weeks after the crime while Padilla, Sr. was recuperating at home, he was shown the same photographic array. Not only did he fail to choose petitioner's photograph but identified as the assailant another person appearing in the lineup. At trial both Padilla, Sr. and Padilla, Jr. made in court identifications of petitioner as the assailant.

Padilla, Sr. testified that he could see his assailant's face for only a short time and could describe him only as a skinny young black male with short hair. Two government witnesses, owner of a business near the scene of the crime, testified that the speed with which the gunshots were fired and the Cadillac driven away rendered positive identification of the perpetrators impossible. No confession, fingerprints, or other corroborating evidence was offered. Petitioner was not arrested at or near the scene or even on the same day as the offense.

1. Arguably, this violated at least the spirit of the trial court's admonition. Jaeger did not *say* that he had the defendant's picture, but introduction of the photo lineup, which Jaeger had prepared, and which included defendant's picture—for all the jurors to see—revealed that Jaeger did have

defendant's picture and put it to use. This connection·of defendant himself with the crime, through a photograph used by Jaeger and connected up by the hearsay testimony, was what the court was seeking to avoid by its admonition.

During final argument the prosecutor referred to Officer Jaeger's testimony in this manner: "The detective came in, you heard him say that he got some information about the ownership of the car and put together a line-up."

█ Petitioner was convicted for attempted first degree murder, aggravated assault and attempted robbery and sentenced to life imprisonment for attempted murder and a concurrent five year term for aggravated assault. On direct appeal, in a one-paragraph opinion, the Florida District Court of Appeals held that it was improper to admit the hearsay evidence as to the basis for the inclusion of petitioner's picture in the photographic lineup but that the error was harmless, *Harris v. State*, 414 So.2d 242 (Fla. 3d DCA 1982). We accept the ruling of the state court that the testimony was hearsay.

The district court correctly saw the issue as whether Jaeger's recital that he obtained information concerning the yellow Cadillac involved in the armed robbery and based thereon compiled the photo lineup (which had petitioner's picture in it) was substantive evidence of petitioner's guilt, both because it bolstered the uncorroborated identification testimony by the Padillas and, independently of the identification testimony, tended to connect defendant with the crime. The court held:

> In fact, the description of the yellow Cadillac was the only piece of evidence about which all Government witnesses were in agreement. The inference that Petitioner owned the automobile, or was otherwise connected with the car as an incident of the crime, was thus a central link in the jury's finding that Petitioner was guilty—a link without which the strained chain of evidence offered by the Government might have been broken.

T. 477–78. The prosecution understood the significance of the yellow Cadillac testimony, as indicated by its statement in final argument, quoted above. The jurors understood the significance of it because during their deliberations they asked the court: "Who owns the Cadillac?" Moreover, the district court found that the testimony was elicited for the purpose of linking petitioner with the crime (though ostensibly to authenticate the lineup). The state acknowledges that the jury would infer that Harris had some connection with the yellow Cadillac:

> The Magistrate then correctly determined that the most reasonable assumption a jury could draw from Jaeger's testimony is that having received a description of the vehicle, he conducted an unspecified investigation, perhaps through motor vehicle records; and learned of some connection Petitioner had with the yellow Cadillac and this caused him to place Petitioner's picture in a photo lineup.

Respondent's brief, p. 21. Jaeger's *reason* for including Harris's photograph was not a necessary predicate for use of the photo display. The display could be shown to the Padillas and identification of petitioner's photograph made therefrom, and that identification admitted into evidence, all without regard to Jaeger's reason for preparing the display and for including petitioner's picture. The impact of what the state recognizes was the jury's "most reasonable assumption" (that Harris was connected with the yellow Cadillac involved in the robbery) remained in the case, stark, unrelieved, strenuously objected to, and not even tempered by an explanatory instruction.

█ The district court found that it did not matter that Jaeger implied rather than explicitly stated that he had been informed by some undisclosed source that the Cadillac belonged to petitioner. We agree. The district court relied upon *Favre v. Henderson*, 464 F.2d 359 (5th Cir.), *cert. denied*, 409 U.S. 942, 93 S.Ct. 235, 34 L.Ed.2d 193 (1972), and *Hutchins v. Wainwright*, 715 F.2d 512 (11th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1427, 79 L.Ed.2d 751 (1984). In *Favre*, an armed robbery case, the prosecution brought out, over objection, through examination of an investigating officer, that on December 1 the officer was in possession of information from

reliable confidential informants and that, on December 1, the officer was seeking to arrest Favre for the armed robbery. The district court granted habeas corpus, finding that the officer clearly implied that the informants had told him something that implicated Favre. The informants thus served as out-of-court declarants who had some reason to consider Favre guilty. On appeal the Fifth Circuit pointed out, as is true in this case, that the testimony tended to show two things: that Favre was identified as the person who committed the crime ("identification") and that in fact Favre committed it ("guilt"). There, as here, other identifications were not strong, and the court rejected an argument by the state that the error was harmless.

The present case is remarkably similar to *Hutchins.* In that case this court held from the record on appeal (though not all of this information was made known to the jury) that an anonymous informant contacted investigating officers and informed them that he knew who had committed an armed robbery and assault, and he gave investigating officers the name and address of the person he said committed the crime and accompanied officers to the address of the person named. Out of fear the informant refused to testify. At trial, during his opening statement, the prosecutor described the police investigation leading to the arrest of petitioner and spoke of how the investigating officer had been contacted by a young man during a canvass of the area where the crime had occurred. Following an objection, a bench conference was held during which the court was informed that the young man had provided the police with information leading them to the residence of the petitioner. The court ruled that the prosecution could inquire of the officer what he did as a result of his investigation. Testimony was allowed, over objection, that the officers had met with a young male in the vicinity of the robbery and had driven with him to petitioner's address. There the officer conducted a further investigation, then returned to his office and made up a photo display containing a photograph of the petitioner. Presumably there was then an identification of petitioner based thereon. As in the present case there was an identification at trial. This court held that the prosecutor, in essence, informed the jury that there existed an eyewitness to the crime who had identified the petitioner to the officers as the perpetrator, and that he accompanied the police to the residence of the petitioner but refused to testify out of fear of retribution, and that this hearsay information brought before the jury violated the confrontation clause.

The district court also relied upon similar Florida state cases reversing convictions for violation of the confrontation clause. In *Molina v. State,* 406 So.2d 57 (Fla.3d DCA 1981), an armed burglary-robbery case, the court of appeal reversed on the ground that the investigating officers' testimony, which stated that after interviewing two non-testifying co-defendants the officers arrested the defendant and placed his photograph in a lineup for identification by the victim, was inadmissible hearsay. Following a retrial the court reversed the same defendant's second conviction, in part on the basis that inferential hearsay had been just as prejudicial to him as the direct hearsay at the first trial. *Molina v. State,* 447 So.2d 253 (Fla. 3d DCA 1983). These two cases were based largely on *Postell v. State,* 398 So.2d 851 (Fla. 3d DCA 1981), which, relying in part on *Favre v. Henderson,* held that the testimony of a police officer, implying that a non-testifying witness had furnished the police with evidence of the defendant's guilt, though the non-testifying party's words were not retold to the jury verbatim, was inadmissible hearsay that substantially affected the defendant's rights to a fair trial. The investigating officer told of having a conversation with an unidentified woman, in the area of the crime and minutes after it occurred. Based upon that conversation he went to defendant's home and arrested him. Identification of the defendant was weak.

The district court in the instant case quoted from *Postell,* as follows, 398 So.2d at 856.

The effect of our holding is to make it impermissible for the State to reap the benefits of the mystery [declarant's] declarations. That is as it should be. Our system demands that the finder of fact determine the believability of any witness and the weight to be given that witness's testimony. That simply cannot be done when the jury is deprived of all opportunity to consider the demeanor of the witness; when the memory, intelligence, and candor of the witness is free from testing; when the bias or interest of the witness cannot be probed; when the witness's opportunity and ability to observe is insulated from questioning; and when, indeed, the witness's identity is totally concealed so as to make her totally unimpeachable. In short, the insidious diminution of the precious rights of confrontation and cross-examination, through some literal application of the rule against hearsay, cannot be tolerated.

In this case, as in *Hutchins*, the prosecution neither made nor attempted any showing to identify the out-of-court declarant (or other source of information) or to show that he was unavailable for trial, or to show that his statements bore sufficient indicia of reliability to provide the jury with an adequate basis for evaluating their truth. All we know is that Jaeger got from some unrevealed source information about the particular yellow Cadillac involved in the crime, impliedly that petitioner was the owner or otherwise connected with it, and included his picture in the photo lineup for that reason. Whether petitioner actually owned the Cadillac, or had any connection with it, was unrevealed except for the inference planted through Jaeger's testimony—and, as we note above, planted unnecessarily.

The error was not harmless. The district court held that the crux of the state's case against petitioner "consisted solely of uncorroborated identification testimony." It noted that brief eyewitness identifications made under stress may be unreliable and must be viewed with caution, citing *U.S. v. Wade*, 388 U.S. 218, 87

S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). A constitutional error in the admission of evidence cannot be harmless if there is a "reasonable probability that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963); *Harryman v. Estelle*, 616 F.2d 870, 876 (5th Cir.) *cert. denied*, 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980). The district court found that Jaeger's yellow Cadillac testimony:

> ... unquestionably affected the jury's determination that the Petitioner was guilty. In short, the sole relevancy of Officer Jaeger's testimony was to bolster the eyewitness testimony which connected the yellow Cadillac to the scene, and the Petitioner to the crime through his alleged connection to the car. The events related by Officer Jaeger as to information he received and his consequent actions specifically pointed to Petitioner HARRIS, and led to the clear and logical inference that an out-of-court declarant had implicated HARRIS in the crime.

There is, therefore, at a minimum a reasonable probability that the yellow Cadillac evidence contributed to the conviction. As described above, the only other evidence connecting petitioner with the crime was the identification by Padilla, Jr. made at the hospital from the photo lineup and the in-court identification by both Padillas. The in-court identification by Padilla, Sr. was undercut by his identification of someone else when the photo lineup was shown to him at his house, his testimony that he could see the assailant for only a short time, and the limited description that he could give of the assailant.

The district court carefully considered the harmless error issue. We agree with its conclusion that the error was not harmless.

AFFIRMED.

JAMES C. HILL, Circuit Judge dissenting:

The rule of law announced in this case is sound. *See Hutchins v. Wainwright,* 715 F.2d 512 (11th Cir.1983). I believe, however, that its application upon the facts of this record is misplaced. I therefore dissent.

The confrontation clause serves to guarantee both a defendant's right to cross-examine a witness, and the opportunity of the jury to observe witnesses and to judge for themselves the credibility of this testimony. *Hutchins v. Wainwright,* 715 F.2d 512, 516 (11th Cir.1983). At stake is a "practical concern for the accuracy of the truth-determining process in criminal trials...." *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970). *See also California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970). Moreover, even if a violation of the confrontation clause is established, it may be harmless error if the remaining evidence in the case establishes the guilt of the accused beyond a reasonable doubt. *Demps v. Wainwright,* 666 F.2d 224, 226 (5th Cir. Unit B.), *cert. denied,* 459 U.S. 844, 103 S.Ct. 98, 74 L.Ed.2d 89 (1982); *Harryman v. Estelle,* 616 F.2d 870, 876 (5th Cir.), *cert. denied,* 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980) (quoting *Fahy v. State of Connecticut,* 375 U.S. 85, 87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963)). Thus, the manifest concern of the confrontation clause is that all criminal convictions be established upon, and only upon, a conclusion that the defendant is guilty beyond a reasonable doubt. This determination is a practical, rather than theoretical one.

Under the facts of the instant case it is undisputed that the perpetrator of this crime arrived in a yellow Cadillac. It is undisputed that this same yellow Cadillac was abandoned on a public thoroughfare. It is undisputed that a person, unknown, informed Officer Jaeger of these facts, and that upon receipt of this information, Officer Jaeger pursued his own investigation of the crime. Under these circumstances I am not persuaded that the testimony of the officer that he did the obvious—commenced his work by investigating the Cadillac—played a significant role in the appellant's conviction. Thus, as a *practical* matter, I believe either that the confrontation clause was not violated or, if it was, that any violation was harmless error. For these reasons I respectfully dissent.