**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Steven D. MARTIN, Defendant–Appellant.**

**No. 89–5528.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 13, 1989.

Decided March 1, 1990.

Rehearing and Rehearing En Banc Denied April 16, 1990.

Joseph M. Whittle, U.S. Atty., Randy W. Ream, Asst. U.S. Atty. (argued), Terry Cushing, Louisville, Ky., for plaintiff-appellee.

Thomas E. Clay (argued), Alan S. Rubin, Louisville, Ky., for defendant-appellant.

Before MERRITT, Chief Judge, KENNEDY, Circuit Judge, and McRAE, Senior District Judge.*

McRAE, Senior District Judge.

Defendant-appellant Steven D. Martin appealed his conviction on two counts of filing a false statement with a government agency in violation of 18 U.S.C. § 1001. For the reasons set forth below, the Court affirms the convictions.

## I

In 1987, the United States Secret Service and the Office of the Inspector General of the U.S. Department of Agriculture ("USDA") began an investigation of suspected illicit trafficking in food stamps. Appellant was general manager of Project Management Systems, Inc. ("PMS"), a corporation under contract with the Commonwealth of Kentucky for the distribution of USDA food stamps in four populous Kentucky counties.

Working undercover, Secret Service Special Agent Don Bell met with appellant for lunch at a Louisville restaurant on October 23, 1987. At that meeting, Bell and appellant discussed, in a tape recorded conversation, the possibility of a sale to Bell of a minimum of 5,000 food stamps. In that conversation, the appellant stated:

> Well, really the safest way to do it is not report that I have the food stamps, and I can only do that at the end of every month.

---

* Honorable Robert M. McRae, Jr., United States District Court for the Western District of Tennessee, sitting by designation.

Appellant further indicated that he was not prepared to make a deal at that time, but would contact Bell in the future.

On November 11, 1987, a search warrant was executed at a Louisville bank on a lock box in the name of PMS. Inside the box, investigators found part of the regular food stamp inventory of PMS, including eight hundred $50 denomination books valued at $40,000.

According to the testimony of Rhonda Martin, who was also a PMS employee, appellant personally picked up the eight hundred $50 books from the armored car company which distributed the stamps, and then brought them home where appellant stored them in a concrete wall from August to October, 1987, when he took the eight hundred $50 books to the lock box and placed them with the regular inventory. Thus, appellant knew of the whereabouts of the eight hundred $50 books of food stamps when he made his monthly reports.

Each month PMS submitted a food stamp accountability report ("FNS–250") to the appropriate Kentucky agency, who then forwarded it to the USDA Food and Nutrition Service ("FNS"). The FNS–250's filed by PMS for July and August, 1987, did not show the possession of the eight hundred $50 books. These two forms were signed by appellant, and each contained a printed statement above his signature certifying the truth and accuracy of the report.

The discrepancy was not discovered by the FNS until early 1988. After PMS was notified of the shortage, appellant submitted revised and corrected FNS–250's.

In August, 1988, an indictment was returned against appellant and Michael T. Moran. In Count 5, the appellant alone was charged with having knowingly used, transferred, acquired and possessed eight hundred $50 books in an unauthorized manner in violation of 7 U.S.C. § 2024(b). Appellant, as the sole defendant, was further charged with two counts of knowingly and willfully making a false statement on the FNS–250 forms in violation of 18 U.S.C. § 1001. In counts 3 and 4, appellant and Moran were charged with a conspiracy to violate or substantive violations of 7 U.S.C. § 2024(b).

Moran pleaded guilty and testified as a government witness. Among other things, Moran testified that he sold small amounts of food stamps to appellant in October, 1986, and September, 1987.

Special Agent Don Bell also testified. The prosecutor, AUSA Ream, began his direct examination of Bell by attempting to "set the scene" for the investigation. This prompted a bench conference at which prosecutor Ream assured the court that no incriminating hearsay about appellant's activities would be elicited. When the questioning resumed, the following critical testimony ensued:

Mr. Ream [prosecutor]: So what did the Secret Service do, and did anyone else cooperate with you in this investigation?

Mr. Bell: Yes sir. Based upon—after I'd received initial information from the State of Kentucky Attorney General's office, another individual was arrested for having in his possession stolen USDA food stamps; and on June the 2nd, 1987, that individual gave me information concerning other individuals who he thought were involved in the theft and/or trafficking of USDA food stamp coupons; and among those individuals that he named was a Steve Martin.

Mr. Adams [appellant's counsel]: Objection, Judge, and motion for mistrial.

At the bench, the prosecutor, expressing regret, said he had asked Bell not to refer to specific persons. He argued, however, that the testimony was only offered as background. The trial court overruled the objection and appellant's motion on the basis that the testimony was not hearsay. He determined that he would admonish the jury not to consider this out of court statement of another person for the truth of the matter asserted, but only as information that prompted the investigation. (Tr. 86).

Appellant was acquitted on the trafficking and conspiracy counts, but he was convicted on both counts of making a false statement.

This appeal presents only two issues which require specific consideration: (1) whether the repetition by Special Agent Bell of another individual's statement naming appellant as involved in the stamp trafficking conduct, constituted inadmissible hearsay, a violation of the Sixth Amendment confrontation clause, or unfairly prejudicial evidence, which required a mistrial or now requires a new trial; and (2) whether the verdicts were inconsistent.

## II

Clearly the testimony of Agent Bell which repeated the verbal statement that Steve Martin was thought to be involved in the theft and/or trafficking of food stamps should not have been admitted. Counsel for the government acknowledged this when he advised the court that Agent Bell acted contrary to the admonition given by prosecutor Ream. The Court does not conclude, however, that the district court committed reversible error by not granting the motion for a mistrial.

■ The Federal Rules of Evidence define hearsay as an out of court statement "offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). The hearsay rule does not apply to statements offered merely to show that they were made or had some effect on the hearer. *See United States v. Gibson*, 675 F.2d 825, 833–834 (6th Cir.1982). In some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay. *United States v. Freeman*, 816 F.2d 558, 563 (10th Cir.1987); *United States v. Love*, 767 F.2d 1052, 1063 (4th Cir.1985), *cert. den.*, 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 890 (1985).

The context of Bell's testimony supports the determination that the assertion of the other person was offered for the limited purpose of explaining how and why the investigation began. The prosecution was not trying to use the other person's information due to a lack of evidence on the substantive charges. The prosecution had other, more probative, evidence of trafficking and willful false statements at its disposal.

Therefore, the testimony based upon an out of court statement of an unnamed person in this case was *not* hearsay *per se*.

■ Counsel for the appellant relies heavily upon *Stewart v. Cowan*, 528 F.2d 79 (6th Cir.1976). In that case, the appellant, Raymond Stewart, challenged his conviction in a Kentucky state court for murder. Stewart claimed a violation of the confrontation clause by the admission during trial of out of court assertions repeated by a police officer and purportedly offered to show the results of the murder investigation. The officer testified to having received five anonymous telephone calls. He further testified that "(a)s a result of our investigation, we learned that everybody in the neighborhood of Hancock and Finzer was saying that Raymond Stewart had shot Robert Benberry." 528 F.2d at 85. This Court held that use of this testimony violated appellant's Sixth Amendment right to confront his accusers. *Id.* at 88.

It is noted, however, that the *Stewart* case has limited applicability to the present hearsay issue for the reason that the question whether out of court statements concerning investigative background are hearsay or non-hearsay was not discussed in *Stewart*.

The Court commented in a footnote, however, that it did not believe the out of court assertions fell within the Kentucky hearsay exception. *Id.* at 86 n. 4. The reason it gave has some bearing, by analogy, on the analysis in the present case under the Federal Rules of Evidence. The Court in *Stewart* said, in effect, that even if an out of court statement is purportedly offered to explain an investigation, it nevertheless may be inadmissible hearsay where it goes "to the very heart of the prosecution's case." *Id.* at 86 n. 4.

In the instant case, however, when the arrestee's assertions are compared with the anonymous out of court assertions in *Stewart*, the Court does not believe the other person's information goes "to the very heart of the prosecution's case." The out

of court statements in *Stewart* pointed to defendant by name and definitely accused him of committing the specific crime charged. In the present case, the appellant is named, but there is only a general and rather vague statement of a belief that Martin was involved in food stamp trafficking. The nature of the out of court assertion does not belie the stated reason given by the prosecution for offering it, i.e., to explain why the government commenced the investigation. The non-hearsay ruling of the district court would not have been erroneous at all if the appellant had not been named in the other person's statement; but the fact that appellant was named did not require a mistrial absent a showing of substantial harm to the defendant.

■ Next, the Court must address the Sixth Amendment issue of the right to confront and cross-examine witnesses. In the appellate case law, no such issue arises under these circumstances. *E.g., Tennessee v. Street*, 471 U.S. 409, 414–415, 105 S.Ct. 2078, 2081–2082, 85 L.Ed.2d 425 (1982); *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970). The assertions in this case were not offered for their content; therefore, there was no need to test the credibility of the out of court declarant as to their substance.

Nonetheless, even though the hearsay rule and confrontation clause were not violated, when inculpatory out of court assertions name the criminal defendant in connection with "setting the scene" for an investigation, the question of unfair prejudice under Rule 403 of the Federal Rules of Evidence almost always arises. That Rule states in relevant part that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,...." Rule 403, Fed.R.Evid.

The relevance and probative value of "investigative background" is often low, but the potential for abuse is high. McCormick on Evidence § 249 at 734 (3rd. ed.1984). In this case, there was no issue of improper investigative methods. The naming of appellant substantially increased the risk the jury would consider the unnamed other person's information in determining the guilt or innocence of appellant on the trafficking counts. The danger was compounded when the prosecutor repeated the appellant's name in briefly summarizing Bell's testimony. The prosecutor had represented to the court that he had told Bell not to name suspected traffickers.

Often a district court's admonition to the jury, although well intended and proper, can be an inadequate safeguard against the potential for unfair prejudice under these circumstances. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

As mentioned, however, the Court believes that any error which occurred in the district court in this case was harmless. Where an error is not of constitutional dimension, it is harmless unless it is more probable than not that the error materially affected the verdict. *U.S. v. Neuroth*, 809 F.2d 339, 342 (6th Cir.1987) (en banc), *cert. denied*, 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987). A federal constitutional error can be held harmless only if the Court is able "to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The error here was harmless even under the more stringent, constitutional standard.

The jury acquitted appellant on the food stamp trafficking and conspiracy counts despite direct testimony of an alleged co-conspirator. In retrospect, this is a strong indication that it did not credit the unknown person's information on appellant's alleged involvement in the food stamp trafficking crimes.

Therefore, the Court concludes beyond a reasonable doubt that the offending out of court assertions did not influence the jury in its guilty verdict on the charges of false statements.

### III

■ Appellant also argues for reversal on the ground that the convictions on the false statement counts were inconsistent

with the acquittals on the trafficking counts.

A defendant may not upset a jury verdict solely because the verdict is not reconcilable with other verdicts for or against the defendant. *United States v. Silva*, 846 F.2d 352, 357–358 (6th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 365, 102 L.Ed.2d 354 (1982).

In any event, the two sets of verdicts in this case are reconcilable. Simply expressed, it was not inconsistent for the jury to conclude that appellant legally possessed the eight hundred $50 books in question but that he had falsely omitted to report their possession.

Appellant also raised the stereotyped ground for reversal, there was insufficient evidence to support a conviction. The standard of review for this ground on appeal is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Gallo,* 763 F.2d 1504, 1518 (6th Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1200, 89 L.Ed.2d 314 (1986).

The Court holds that the evidence from which the jury could find appellant guilty of making false statements beyond a reasonable doubt, was so abundant that specific delineation of it is not necessary.

Accordingly, for the reasons stated, the Court AFFIRMS the conviction of the appellant.

MERRITT, Chief Judge, concurring in part and dissenting in part.

I concur in the majority's holding that Martin's conviction on the false statement counts was not inconsistent with his acquittal on the trafficking counts, and that his *Jackson v. Virginia* claim is without merit. But I would not uphold the trial court's admission of the federal agent's hearsay testimony on direct examination said to "set the scene" or provide "background." This hearsay by an unnamed, out-of-court declarant that the defendant had committed the same crimes before was highly damaging to the defendant, and falls into no existing exception to the hearsay rule. Also, such hearsay testimony violates the Confrontation Clause of the Sixth Amendment to the Constitution.

*First,* the majority asserts that the agent's testimony, offered for the limited purpose of demonstrating why the government initiated its investigation of Martin, is not hearsay. This view receives some ambiguous support from the decisions of other circuits which have not seriously considered the point. *See, e.g., United States v. Freeman,* 816 F.2d 558 (10th Cir.1987); *United States v. Love,* 767 F.2d 1052 (4th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 890 (1986); *United States v. Scott,* 678 F.2d 606 (5th Cir.), *cert. denied,* 459 U.S. 972, 103 S.Ct. 304, 74 L.Ed.2d 285 (1982); *United States v. Mancillas,* 580 F.2d 1301 (7th Cir.), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978). Yet no court has explained why investigative background is not hearsay or is necessary or even helpful to jurors in a criminal trial. Jurors need not revisit the government's preliminary investigative processes, especially when such low-value evidence comes at such a high price to the accused. For prosecutors determined to present such low-value evidence, they should at least have to produce the out-of-court declarant for cross-examination, or demonstrate his or her unavailability. No such effort was made here.

Under the majority's view, the government apparently offered the out-of-court statements only to show that they were made or that they had some effect on the hearer, and not for the truth of the matter asserted. *See* Fed.R.Evid. 801(c). Not only is this class of nonhearsay statements normally reserved for different application,[1] but the strength of the majority's

---

**1.** This class of nonhearsay customarily involves statements that bear on the probable state of mind of the hearer. *See McCormick on Evidence* § 249, at 733–34 (E. Cleary ed. 1984) (statements may be considered nonhearsay if offered to show, for example, the hearer's no-

argument is undercut further by the fact that the government's reasons for initiating its investigation are not at issue. Had Martin claimed some form of investigatory or prosecutorial misconduct, such as lack of probable cause, then the majority's argument would have greater force. *Cf. Tennessee v. Street*, 471 U.S. 409, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985) (accomplice's written confession admissible only to rebut defendant's claim that his confession was coerced). Otherwise, it is difficult to see what value the out-of-court statements would retain except to inform jurors that an out-of-court declarant not subject to cross-examination believed that Martin was a food-stamp trafficker.

The admissibility of background testimony is not a question of first impression for this Court. In *Stewart v. Cowan*, 528 F.2d 79 (6th Cir.1976), we held that an officer's background testimony, which indicated that "a number of people in the neighborhood" felt that defendant was guilty of a shooting, violated Stewart's confrontation guarantee under the Sixth Amendment. Our decision in *Stewart* is reinforced by other courts of appeals which have ordered new trials in cases where the trial judge permitted prosecutors to present evidence of this type to juries. *See, e.g., United States v. Brown*, 767 F.2d 1078 (4th Cir.1985); *Harris v. Wainwright*, 760 F.2d 1148 (11th Cir.1985); *United States v. Hilliard*, 569 F.2d 143 (D.C.Cir.1977). Although the majority attempts to distinguish *Stewart*, both that case and ours involve statements of out-of-court declarants who named the defendant as being guilty of a crime. If, as the majority states, the testimony in *Stewart* went to "the very heart of the prosecution's case," then so did it here.

*Second*, the majority seems to hold that because the agent's testimony was not hearsay, we need not analyze whether the trial court violated Martin's confrontation guarantee. The agent's testimony served only to inform the jury that an absent, unidentified declarant believed that Martin had committed prior acts of food-stamp trafficking. I therefore do not understand how the testimony at issue could be anything but hearsay. As such, the trial court's admission of the hearsay testimony violated Martin's right to confront the witnesses against him. Against the backdrop of Supreme Court precedents constitutionalizing "firmly rooted" hearsay exceptions, the majority cites no exception, firmly rooted or otherwise, that warrants admission of the damning statements of an unidentified accuser. Because I do not see how the out-of-court statements could be of any use except to convey to the jury uncross-examined testimony as to Martin's guilt, I conclude that the trial court violated Martin's Sixth Amendment right to confront his out-of-court accuser and to test that accuser's testimony by cross-examination. *See, e.g., Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (central value of face-to-face encounters is to enhance reliability of accuser's testimony); *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) (same); *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (same).

*Third*, I disagree with the majority's holding that, in any event, the error was harmless beyond a reasonable doubt.[2] Because of the vagaries of the subjective thought processes of jurors, I believe the error raises a reasonable doubt concerning the jury's use of the hearsay. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *cf. Harris v. Wainwright*, 760 F.2d 1148 (11th Cir.1985) (admission of investigative background testimony violated confrontation guarantee and was not harmless error); *Hutchins v. Wainwright*, 715 F.2d 512 (11th Cir.1983) (same), *cert. denied*, 465 U.S. 1071, 104

tice, knowledge, motive, anxiety, or reasonableness of action). Our case, however, turns on the intent of Mr. Martin, not of the undercover agent or his superiors.

**2.** Because the trial court's admission of the testimony in question violated both the rule against hearsay and the Confrontation Clause, and is

therefore reversible under the *Chapman v. California* harmless error standard, I need not address whether the same testimony, if cross-examined, would be inadmissible propensity evidence under rules 403 and 404(b) of the Federal Rules of Evidence.

S.Ct. 1427, 79 L.Ed.2d 751 (1984); *Stewart, supra* (same); *Favre v. Henderson,* 464 F.2d 359 (5th Cir.) (same), *cert. denied,* 409 U.S. 942, 93 S.Ct. 235, 34 L.Ed.2d 193 (1972). This was a close case in which the defendant's conviction on fraudulent statement charges was accompanied by acquittal on conspiracy and trafficking charges. We do not know, beyond a reasonable doubt, that the jury did not use the hearsay testimony in question to infer fraud.[3]

The Federal Rules and the Constitution clearly protect criminal defendants from prosecution based on hearsay and otherwise unduly prejudicial evidence. Accordingly, I respectfully dissent from the majority's holding that the trial court's error does not warrant a new trial.

---

**3.** The majority concedes the ineffectiveness of curative jury instructions in this type of case.