917 F.2d 564
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clifford J. DOBBINS, Defendant-Appellant.
 No. 90-5475.
 United States Court of Appeals, Sixth Circuit.
 Nov. 1, 1990.
 
 On Appeal from the United States District Court for the Western District of Tennessee.
 W.D.Tenn.
 AFFIRMED.
 Before MERRITT, Chief Judge; and BOYCE F. MARTIN, Jr. and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Clifford James Dobbins appeals his jury conviction on one count of possessing a prohibited object, a sharpened instrument, in violation of 18 U.S.C. Sec. 1791(a)(2).
 
 
 2
 Clifford James Dobbins is an inmate at the Federal Correctional Institution, Memphis, Tennessee. On April 15, 1989, at approximately 11:00 p.m., Dobbins was involved in an altercation with Donald Lee Herbin, another inmate of FCI-Memphis. The altercation resulted in Herbin receiving puncture wounds to the back and abdomen. Prison officials removed a steel "shank" (a homemade knife) from Dobbins immediately following the incident. Dobbins was later indicted for assault with intent to commit murder and possession of a prohibited object by an inmate. Dobbins was found not guilty of assault with intent to commit murder.
 
 
 3
 The trial testimony developed the following facts: Upon arrival at FCI-Memphis, Dobbins had been assigned a cell which had previously been assigned to Donald Lee Herbin. Herbin was in the process of being transferred out of FCI-Memphis to face bank robbery charges in North Carolina. Due to Herbin's refusal to sign extradition papers, Herbin was sent back to the FCI-Memphis. Upon his return, Herbin demanded to be assigned to his former cell. Herbin was assigned a cell near his former cell, but was not assigned to his old cell since it had already been assigned to Dobbins. Herbin later asked Dobbins to switch cells with him. Dobbins refused.
 
 
 4
 Herbin had left a government issued raincoat in his former cell. These raincoats are available to inmates upon request from the laundry department. These raincoats are government property and do not ever become the personal property of an inmate. Herbin's former cellmate, Omar King, testified that Herbin had given this raincoat to him when Herbin left FCI-Memphis. King further testified that he subsequently gave this raincoat to Dobbins when Dobbins was assigned to be his cellmate. Upon returning to FCI-Memphis, Herbin demanded that Dobbins return this particular raincoat to him. Dobbins refused.
 
 
 5
 Dobbins' refusal to acquiesce to Herbin's demand for the raincoat led to a confrontation between the two inmates. This incident apparently took place a few days prior to the April 15th altercation. Herbin approached Dobbins as the two were on their way to the evening meal and demanded that Dobbins return his raincoat to him. The testimony established that Herbin was the initial aggressor in this situation. Herbin apparently punched Dobbins in the mouth, threw him to the ground, and punched him three more times in the abdomen. After the fight both inmates continued on to the evening meal. There doesn't appear to have been any more incidents between Herbin and Dobbins until April 15th.
 
 
 6
 On April 15, 1989, at approximately 11:00 p.m., Herbin was in the television room looking for one of his friends. Dobbins apparently approached Herbin from the rear and stabbed him in the back using a shank. Herbin tried to avoid any further injury by backing away from Dobbins. Dobbins continued to lunge at Herbin, wounding him in the stomach. Correctional Officer Vassar Richmond attempted to intervene, but when he noticed that Dobbins was in possession of a weapon he called for back-up. Other prison officials arrived on the scene and ordered Dobbins to surrender the weapon. Dobbins continued to wave the shank around for five to ten minutes after Herbin had been removed from the room. Dobbins finally surrendered the weapon to Lt. Reginald Ammons.
 
 
 7
 At the trial, the prosecution elicited testimony from a number of prison officials who established that Dobbins was in possession of the shank during the altercation between the two inmates and that Dobbins continued waving the shank around for five to ten minutes after being instructed to surrender the weapon. Herbin also testified that Dobbins attacked him from behind with something in his hand, later identified as the shank.
 
 
 8
 In defense, Dobbins called a number of witnesses who established that Herbin had been harassing Dobbins because Dobbins had refused to switch cells with Herbin and to return Herbins's old raincoat to him. Several inmates testified that Herbin was the initial aggressor in the fight over the raincoat. Dobbins also produced the testimony of a Mr. Sims, who testified that Herbin was the initial aggressor in the confrontation which occurred the evening of April 15th. Mr. Sims testified that Herbin initially attacked Dobbins, but Dobbins was able to disarm Herbin and use the shank to defend himself.
 
 
 9
 The jury returned a verdict of not guilty as to count one of the indictment of assault with intent to commit murder. The jury found Dobbins guilty of count two of the indictment of possessing a prohibited object.
 
 
 10
 Dobbins challenges his conviction by arguing there was insufficient evidence to establish that he was guilty beyond a reasonable doubt of possessing a prohibited object while he was an inmate at the Federal Correctional Institution at Memphis. Dobbins bases his argument on eyewitness testimony establishing that Dobbins was attacked by Herbin on the night of April 15th. Dobbins argues that since he did nothing more than disarm the initial aggressor Dobbins, he did not "knowingly" possess a prohibited object.
 
 
 11
 The standard of review for determining the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Martin, 897 F.2d 1368, 1373 (6th Cir.1990) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985) cert. denied, 475 U.S. 1017, 106 S.Ct. 1200, 89 L.Ed.2d 314 (1986)).
 
 
 12
 The jury heard contradictory testimony as to how Dobbins came to possess the shank. Sims testified that Herbin attacked Dobbins with the shank and that Dobbins took the weapon from him and used it in self-defense. However, Herbin testified that he was attacked by Dobbins from behind and turned to observe Dobbins holding an object later identified as the weapon. It was up to the jury to assess the credibility of these witnesses. United States v. Schultz, 855 F.2d 1217, 1221 (6th Cir.1988).
 
 
 13
 Furthermore, the jury heard testimony from a number of prison officials which established Dobbins possessed the weapon at the end of the altercation and that he continued to wave the shank around in a threatening manner for five to ten minutes after being told to surrender it.
 
 
 14
 This testimony provides ample support to conclude that Dobbins possessed the shank for other than an innocent reason.
 
 
 15
 The judgment is affirmed.