39 F.3d 1183
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles S. RUDOLPH, Defendant-Appellant.
 No. 93-2392.
 United States Court of Appeals, Sixth Circuit.
 Oct. 27, 1994.
 
 Before: MARTIN and SUHRHEINRICH, Circuit Judges; and JORDAN, District Judge.*
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Charles S. Rudolph appeals his convictions on drug and gun charges. Rudolph maintains that the district court erroneously admitted a remark Rudolph made concerning his prior drug dealing, and a police officer's statement that constituted hearsay. In addition, Rudolph contends that the court erred in denying his suppression motion, and that there was insufficient evidence to support his conviction for being a felon in possession of a firearm. Finally, Rudolph argues that the cumulative effect of these four errors mandates a reversal of his convictions. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 * After receiving information from a reliable source that a street-level heroin operation had recently begun at a house located at 2244 E. Willis in Detroit, Michigan, Deputy Sheriff Alexander Traczuk and another agent of the Drug Enforcement Administration Task Force in Detroit began surveillance of the premises. Traczuk also learned that electrical service had been established at the home in Rudolph's name on March 5, 1993. While conducting the surveillance, the agents observed numerous individuals walk up to the house, pass currency through a mail slot in the metal-grate front door, and receive small packages in return. Each of these transactions lasted less than one minute. In addition, the agents noted that an AMC Renault registered to Rudolph was parked in front of the home throughout the surveillance period.
 
 
 3
 On April 5, Traczuk and Special Agent Michael Hawes followed and detained an individual, later identified as Roosevelt Morgan, after he had engaged in one of these brief transactions and driven away from the house. At the time he was stopped, Morgan was attempting to destroy a white coin envelope containing heroin. Morgan informed the agents that he had purchased the drugs for ten dollars from "Rudy" at a residence on "East Willis" matching the description of the house that the agents had placed under surveillance.
 
 
 4
 Based on an affidavit Traczuk submitted detailing the above information, the agents obtained a search warrant for the house on April 6. On the morning of April 7, prior to executing the warrant, Hawes observed two more transactions and noted that Rudolph's car was parked out in front of the house once again. Upon entering the premises, the agents found Rudolph, the sole occupant, asleep on the dining room floor beside a table. On the table were seven packets of heroin--each packaged like the one found on Morgan--in a bundle in a Q-tip box, and a partially loaded semi-automatic handgun. In the table's drawer, the agents discovered personal papers belonging to Rudolph, a box for the gun, a spare ammunition clip, and more ammunition. In an adjoining bedroom, the agents found a jacket, which they had seen Rudolph wearing two days before, containing a bundle of twelve more white coin envelopes of heroin. Finally, the agents recovered $5,500 in cash from Rudolph's wallet and $61 in cash from his pants pocket.
 
 
 5
 After being advised of his rights, Rudolph stated words to the effect of "this is nothing. I worked very big deals with [a particular person] back in '74." Rudolph also denied that he was a heroin user or that he owned the residence, and claimed that he was in fact house-sitting on behalf of the actual owner.
 
 II
 
 6
 On July 14, a federal grand jury returned a three-count, second superseding indictment charging Rudolph with the following offenses: (1) possession with the intent to distribute heroin within 1,000 feet of a school, in violation of 21 U.S.C. Secs. 841(a)(1) & 860; (2) being a felon in possession of a firearm, in violation of 18 U.S.C. Sec. 922(g)(1); and (3) using and carrying a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. Sec. 924(c).
 
 
 7
 Alleging that Traczuk had fabricated the statement attributed to Morgan in the affidavit, Rudolph moved to suppress the evidence seized pursuant to the search of his residence. The district court responded that even without the challenged statement, the affidavit established probable cause for the warrant. Accordingly, in challenging Morgan's statement only, Rudolph had not made a sufficient showing to necessitate a hearing on Traczuk's credibility pursuant to Franks v. Delaware, 438 U.S. 154 (1978), and the court denied the suppression motion. United States v. Cummins, 912 F.2d 98, 101 (6th Cir.1990) (defendant entitled to evidentiary hearing on veracity of warrant affidavit "if and only if" defendant makes a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false, and a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side). The court also denied a subsequent motion challenging the general sufficiency of the affidavit.
 
 
 8
 On October 7, after a jury had found Rudolph guilty on all three counts of the indictment, the district court sentenced him to a term of eleven and one-half years of imprisonment. This timely appeal followed.
 
 III
 
 9
 and
 
 
 10
 Rudolph argues that the government offered his comment that he had been involved in "big deals back in '74" only to show his propensity to distribute narcotics, and thus the district court should have excluded the remark under Federal Rule of Evidence 404(b). This argument is without merit.
 
 
 11
 Rule 404(b) is designed to prevent the introduction of evidence of a defendant's other bad acts, which might adversely reflect on the defendant's character, unless such evidence bears on a relevant issue in the case. Huddleston v. United States, 485 U.S. 681, 685 (1988). We have noted that this is a rule of inclusion, not one of exclusion, and that the list of purposes contained in Rule 404(b) for which evidence of other bad acts may properly be admitted is not exhaustive. United States v. Bakke, 942 F.2d 977, 981 (6th Cir.1991). If the district court determines that the evidence of other bad acts at issue is being offered for a proper purpose, and not merely to prove a defendant's propensity to commit such acts, the court must then also determine, pursuant to Federal Rule of Evidence 403, whether the probative value of the evidence is substantially outweighed by its prejudicial effect. United States v. Fountain, 2 F.3d 656, 666 (6th Cir.), cert. denied, 114 S.Ct. 608 (1993). In considering a district court's evidentiary ruling under Rule 404(b), this Court reviews de novo the underlying admissibility of the "other acts" evidence. Id. at 667. We review for abuse of discretion only, however, the district court's balancing of the probative value of the evidence against its prejudicial effect. Id.
 
 
 12
 Here, Rudolph's comment concerning his involvement in prior drug deals was necessarily introduced to provide a context for the otherwise ambiguous first part of the statement, in which Rudolph remarked "this is nothing." See United States v. Wiggins, 509 F.2d 454, 462 (D.C.Cir.1975) (exception to the inadmissibility of evidence of other bad acts may exist where "defendant in his confession of one crime refers to the commission of another offense in such a way that the confession is unintelligible if the reference to the other offense is omitted"). The entire statement was therefore admissible under Rule 404(b) because it was introduced not merely to show Rudolph's criminal propensity, but rather as an admission that he was involved in what he considered to be a relatively small heroin operation, and thus as an expression of his consciousness of guilt. See United States v. Mendez-Ortiz, 810 F.2d 76, 79 (6th Cir.1986) (evidence that defendant threatened and attempted to bribe witness admissible under Rule 404(b) because evidence established defendant's consciousness of guilt), cert. denied, 480 U.S. 922 (1987). Finally, given in particular that the government offered Rudolph's statement in a paraphrased form that avoided any reference to specific heroin sales, we believe that the district court did not abuse its discretion in finding that the probative value of this evidence was not substantially outweighed by its prejudicial effect.
 
 B
 
 13
 Rudolph alleges that Special Agent Hawes' testimony that he "had received information" that heroin was being sold from 2244 E. Willis constituted inadmissible hearsay, and that the admission of this testimony violated Rudolph's rights under the Confrontation Clause of the United States Constitution. Moreover, if the statement was not offered for the truth of its content, Rudolph asserts that its only probative value--to establish why the agents began investigating the premises--was substantially outweighed by the prejudicial impression it created that Rudolph was a heroin dealer, not just a user. We disagree.
 
 
 14
 This Court reviews de novo a trial court's determination as to whether certain testimony constitutes hearsay. United States v. Pulley, 922 F.2d 1283, 1288 (6th Cir.), cert. denied, 112 S.Ct. 67 (1991). Federal Rule of Evidence 801(c) defines hearsay as an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Here, the government contends that it offered the tip that Agent Hawes' received concerning heroin sales at 2244 E. Willis not to demonstrate the truth of this information, but merely to explain "how and why the investigation [of the residence] began." United States v. Martin, 897 F.2d 1368, 1371 (6th Cir.1990). As in Martin, the assertion that the informant's statement was offered only for this limited purpose is supported by the fact that the government possessed other, more probative evidence of the actual heroin distribution taking place at the residence in question. Id. at 1371. Because we agree that the informant's statement was not offered for the truth of its content, we reject Rudolph's further allegation that the district court erred in not allowing him to test the informant's credibility. Id. at 1372. We therefore find that the statement in question did not constitute inadmissible hearsay, and that the district court did not violate Rudolph's Confrontation Clause rights by admitting the statement.
 
 
 15
 Next, we address whether the district court nonetheless erred in allowing the informant's statement into evidence because its prejudicial effect substantially outweighed its probative value. We note first that Rudolph's counsel implied in his opening remarks that he would challenge the inherent "contradictions" in the agents' investigative efforts leading up to the search of Rudolph's residence. See Pulley, 922 F.2d at 1288 (finding that testimony explaining how and why investigation began had higher probative value where propriety of investigative methods was at issue). The informant's statement, moreover, did not identify Rudolph as the suspected drug dealer at 2244 E. Willis, and the prosecutor did not subsequently emphasize or even mention the statement after it was initially introduced. Compare Martin, 897 F.2d at 1372 (finding increased risk of prejudice where statement regarding how and why investigation began named defendant, and where prosecutor repeated defendant's name in briefly summarizing that testimony). Finally, any potential unfair prejudice to Rudolph created by Hawes' testimony that he began the investigation because he "had received information" regarding heroin sales at the residence was overcome by the other, strong evidence of distribution corroborating the information in the tip. Accordingly, we conclude that the district court did not err in finding that the probative value of the informant's statement was not substantially outweighed by its prejudicial effect.
 
 C
 
 16
 Rudolph contends that the district court erred in failing to suppress all of the physical evidence discovered in the house. Under the totality of the circumstances test, Rudolph argues, the affidavit pursuant to which the search warrant was obtained did not support a finding of probable cause. Illinois v. Gates, 462 U.S. 213, 238 (1983) (adopting the totality of the circumstances approach). Specifically, Rudolph maintains that the affidavit: (1) contained only a conclusory statement regarding the veracity and reliability of the confidential informant who indicated that heroin was being sold at 2244 E. Willis; (2) lacked any explanation of the informant's basis of knowledge regarding this information; (3) contained no details that could be corroborated by independent police investigation; and (4) was based in part on the unreliable, and subsequently recanted, statement of an individual--Morgan--who had just been detained for criminal conduct. We are not persuaded.
 
 
 17
 After making his suppression motion, Rudolph submitted an affidavit in which Morgan, the individual whom the agents detained pursuant to their surveillance of Rudolph's residence, disavowed the statements attributed to him in the affidavit for the search warrant. The district court subsequently determined, however, that the government's affidavit established probable cause for the search of the residence even absent Morgan's statements. In considering the sufficiency of the evidence presented in the government's affidavit, we will accept, as did the district court, Rudolph's invitation to disregard Morgan's admission that he bought heroin from "Rudy" for ten dollars at a house on East Willis resembling Rudolph's residence. This Court reviews a district court's factual findings on suppression issues for clear error, and the district court's conclusions of law under a de novo standard. United States v. Baro, 15 F.3d 563, 566 (6th Cir.1994). In addition, the Court "review[s] the evidence 'in the light most likely to support the district court's decision.' " United States v. Williams, 962 F.2d 1218, 1221 (6th Cir.) (quoting United States v. Gomez, 846 F.2d 557, 560 (9th Cir.1988)), cert. denied, 113 S.Ct. 264 (1992).
 
 
 18
 Rudolph's remaining challenges to the affidavit for the search warrant--other than that it was based in part on Morgan's recanted admission--all focus on the nature of the confidential informant's tip. Although the tip did indeed provide the catalyst for the investigation, we agree with the government's position that the agents' subsequent surveillance of that residence, and not the tip alone, provided the actual probable cause supporting the warrant. Traczuk, a fourteen-year police veteran with considerable experience in narcotics investigation, stated in the affidavit that he observed suspicious activity, consistent with drug trafficking, at the house on several occasions. In particular, Traczuk detailed the repeated, brief transactions through the front-door mail slot, and Traczuk's and Hawes' discovery that one of these customers--Morgan--was thereafter in possession of a street-level-sized packet of heroin. These observations and the fact that an electricity account had been established for the house only one month previously, moreover, did in fact corroborate the confidential informant's tip that a street-level heroin operation had "recently gotten underway" at the residence. Finally, the affidavit noted that Rudolph's AMC Renault was parked in front of the residence during each of the above transactions, that a black male otherwise fitting Rudolph's description was in the residence when Morgan made his heroin purchase, and that the affiant was aware that Rudolph had at least three prior narcotics convictions. Viewing this evidence, as we must, in its totality and in the light most likely to support the district court's conclusion, we conclude that the district court did not err in finding that Traczuk's affidavit established probable cause. Thus, the district court also did not err in refusing to suppress the evidence gathered pursuant to the search warrant.
 
 D
 
 19
 Rudolph maintains that because the government failed to produce an order of conviction establishing that he had previously been convicted of a felony, the evidence at trial was insufficient to support his present conviction for being a felon in possession of a firearm. In connection with the alleged prior felony, Rudolph concedes that the government offered: (1) the testimony of Lieutenant John Whitty, the officer in charge of the prior case who witnessed Rudolph's guilty plea; (2) the charging document; (3) the order of probation; and (4) Rudolph's arrest record. According to Rudolph, however, all of this evidence is also consistent with findings either that Rudolph was previously convicted only of a misdemeanor, or that he was sentenced to probation without an accompanying entry of conviction. Although Rudolph's trial counsel failed to move for a judgment of acquittal on the basis of insufficiency of the evidence, Rudolph maintains that his conviction for being a felon in possession based solely on the evidence adduced at trial constitutes plain error. United States v. Cox, 957 F.2d 264, 265 (6th Cir.1992) (defendant's failure to preserve issue on appeal limits this Court's inquiry to whether conviction amounted to manifest miscarriage of justice).
 
 
 20
 The standard of review on questions of sufficiency of the evidence is narrow. In criminal cases such as this one, we look only to whether after reviewing "the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." United States v. Beddow, 957 F.2d 1330, 1334 (6th Cir.1992) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Indeed, even "circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not 'remove every reasonable hypothesis except that of guilt.' " United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (quoting United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984)). As Rudolph acknowledges, finally, because the issue was not properly preserved on appeal, our review is limited to whether Rudolph's conviction here for being a felon in possession constituted plain error.
 
 
 21
 At trial, Lieutenant Whitty testified that, as the arresting and complaining officer, he was in charge of a prior, 1988 investigation into Rudolph's possession of heroin. In addition, Whitty testified that he was present in court when, as a result of that investigation, Rudolph pled guilty and was convicted of felony possession of less than twenty-five grams of heroin. We believe that this testimony constitutes ample evidence for the jury to have concluded beyond a reasonable doubt that Rudolph had been previously convicted of a felony. Consequently, Rudolph's conviction for being a felon in possession of a firearm does not amount to plain error.
 
 
 22
 In the alternative, Rudolph urges that his trial attorney's failure to object to the sufficiency of the evidence supporting his felon in possession conviction constituted ineffective assistance of counsel. We have held that:
 
 
 23
 [a]s a general rule, a defendant may not raise ineffective assistance of counsel for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations. The customary procedure followed in this situation by the various circuits is to permit the defendant to raise his ineffectiveness of counsel claim in a proper post-conviction proceeding under 28 U.S.C. Sec. 2255.
 
 
 24
 United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990) (citations omitted). While acknowledging this holding, Rudolph notes that this Court has expressed a willingness nonetheless to address ineffective assistance claims where "the record is adequate to assess the merits of the defendant's allegations." Id. Rudolph contends that his case comes within this exception to the general prohibition on raising ineffective assistance of counsel claims on direct appeal because no viable strategy could have justified his trial attorney's failure to argue that the government produced insufficient evidence of Rudolph's 1988 felony conviction. This procedural argument is without merit. In order to determine if, in fact, no viable strategy could have dictated not objecting to the sufficiency of the evidence supporting the 1988 conviction, we would be forced to speculate as to every possible rationale for trial counsel's decision not to raise such an objection. This we decline to do. We therefore conclude that the record is not adequately developed for us to consider Rudolph's ineffective assistance claim on direct appeal. Rudolph retains the right, of course, to argue ineffective assistance in a proper post-conviction proceeding under Section 2255.
 
 E
 
 25
 Rudolph argues that the cumulative effect of the district court's errors mandates a reversal of his convictions. United States v. Parker, 997 F.2d 219, 222 (6th Cir.1993) (finding that the combined effect of four errors "was so prejudicial as to strike at the fundamental fairness of the trial"). Because we conclude that the district court did not commit any of the four errors Rudolph has alleged, we necessarily reject this argument.
 
 IV
 
 26
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation