39 F.3d 1182
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond T. CLAY, Defendant-Appellant.
 No. 91-5409.
 United States Court of Appeals, Sixth Circuit.
 Oct. 28, 1994.
 
 Before: MARTIN and JONES, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, Raymond Clay, appeals his conviction of drug possession and distribution, on evidentiary grounds, and appeals his sentence, on the grounds that unconstitutional convictions were used to enhance the sentence. For the reasons stated herein, we AFFIRM.
 
 I.
 
 2
 In May 1988, Detective James A. Luna was informed by a concerned citizen that Raymond Clay was dealing drugs and that Clay had sent two people to Atlanta, Georgia in a rental car to pick up fourteen kilograms of cocaine for him. Subsequently, the same citizen told Luna that Clay lived at 420 Walton Lane, Apartment K-66 in Nashville, Tennessee. Based on these two conversations, Luna had the vice squad set up surveillance on the apartment. The surveillance was constant for the first three days, and periodic for several months thereafter. It did not turn up a rental car that could be traced back to Clay, but Clay was observed going in and out of the apartment on several occasions.
 
 
 3
 On August 30, 1988, Sergeant McWright saw Clay enter the apartment carrying a bag. Shortly thereafter, another man entered, then exited and drove off. Three officers followed the car while checking on the license plate. The car was registered to Jerome Dobbins, who had a narcotics record. The officers pulled the car over. The driver was then identified as Bennie Clay, the Defendant's uncle, and the officers determined that he was carrying a loaded weapon and had possession of two ounces of cocaine. At four o'clock in the morning, immediately after arresting Bennie Clay, the officers sought a search warrant for apartment K-66. They secured one and proceeded to use Bennie Clay to help them execute it, by having him knock at the apartment door. A male voice inside asked who was knocking. "Bennie," he replied. The voice asked if he was alone. Bennie said he was.
 
 
 4
 As the door began to open, the officers rushed it and, after some struggle, succeeded in entering. Although the apartment was pitch black, Luna yelled, "Drop it!" There was a loud thud directly in front of him, and then lights were turned on. Clay was standing in front of Luna only two feet away, and a semi-automatic weapon was lying on the floor between them. Angela Pritchett, the owner and resident of apartment K-66, was standing off to the left in the living room. Upon searching the apartment, the officers found and seized bags of white powder, identified later as cocaine, bags of marijuana, two pistols, the rifle that was lying in front of Luna when the lights came on, and a shoe box containing $41,000.00 in cash. They also found bags of cocaine in the trunk of a Chevrolet Malibu that both Pritchett and Clay had driven at times, although Pritchett had been the last to drive it on the night of the search.
 
 
 5
 On June 15, 1989, a Grand Jury for the Middle District of Tennessee charged Clay in a six-count indictment. Five of the charges are relevant for this appeal: (1) conspiracy to knowingly and intentionally distribute or dispense, or to possess with the intent to distribute, or dispense, cocaine and marijuana, in violation of 21 U.S.C. Sec. 846 (1988); (2) knowingly and intentionally possessing with the intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1) (1988); (3) knowingly and intentionally possessing with the intent to distribute marijuana, in violation of 21 U.S.C. Sec. 841(a)(1); (4) possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c)(1) (Supp.IV 1992); and (5) being previously convicted of three or more violent felonies and willfully possessing firearms, in violation of 18 U.S.C. Sec. 922(g)(1) (1988), 18 U.S.C. Sec. 924(a)(1) (Supp.IV 1992), and 18 U.S.C. Sec. 922(e)(1) (1988). Clay was convicted of these counts on November 15, 1989, and was finally sentenced on March 18, 1991 to a total of twenty years of imprisonment followed by three years of supervised release. Clay raises three issues in his timely appeal.
 
 II.
 
 6
 First, Clay asks this court to consider whether the district court erred in ruling that an out-of-court statement that Clay was dealing drugs was not hearsay. We review de novo a district court's conclusion on whether proffered evidence constitutes hearsay. United States v. Pulley, 922 F.2d 1283, 1288 (6th Cir.), cert. denied, 112 S.Ct. 67 (1991).
 
 
 7
 Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). During his testimony, Detective Luna was asked to describe the events leading up to the request for a search warrant on August 31, 1988. He replied, "Back in May '88, I received a call from a concerned citizen regarding Raymond Clay. Supposedly Mr. Clay was dealing drugs in the Madison area." J.A. at 352-53. Clay's counsel objected to the statement as hearsay. The court responded by immediately cautioning the jury not to accept the caller's statement as proof that Clay was indeed selling drugs, but "only for the purpose of explaining Mr. Luna's actions." J.A. at 353.
 
 
 8
 This court has held that statements offered simply to record that they were made or to explain a hearer's reaction are not hearsay. United States v. Martin, 897 F.2d 1368, 1371 (6th Cir.1990); see United States v. Gibson, 675 F.2d 825, 833-34 (6th Cir.), cert. denied, 459 U.S. 972 (1982). In Martin, the objected-to testimony had been offered "for the limited purpose of explaining how and why the investigation began." 897 F.2d at 1371. The court therefore found that the statement was not hearsay. Id. Because the facts of the instant case parallel the facts in Martin, we find that the district court properly ruled that Luna's statement was not hearsay.
 
 
 9
 Having determined that the testimony was not hearsay, we can also dispose of two related issues that Clay raises. First, he alleges that even if the statement was not hearsay, it was so prejudicial as to be precluded from admission by Federal Rule of Evidence 403, which states in pertinent part that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Id. We note that admission of evidence under Rule 403 is left to the discretion of the district court, United States v. Ramirez, 871 F.2d 582 (6th Cir.), cert. denied, 493 U.S. 841 (1981), and that the district court in this case found that the danger of unfair prejudice did not outweigh the probative value of the statement. To combat any potential for prejudice, the district court gave limiting instructions to the jury immediately after Luna made the statement at issue. Granted, "[o]ften a district court's admonition to the jury, although well intended and proper, can be an inadequate safeguard against the potential for unfair prejudice under these circumstances." Martin, 897 F.2d at 1372. Nevertheless, as in the Martin case, we find that even if the district court erred in admitting Luna's statement, the error was harmless, because it is highly unlikely "that the error materially affected the verdict." Id.[1]
 
 
 10
 Second, Clay also claims that the admission of Luna's statement violated his constitutional rights under the Confrontation Clause, because he was not able to cross-examine the "concerned citizen" accuser, to determine his or her truthfulness. The Martin court briefly addressed this issue as well: "In the appellate case law, no [Confrontation Clause] issue arises under these circumstances. The assertions in this case were not offered for their content; therefore, there was no need to test the credibility of the out of court declarant as to their substance." 897 F.2d at 1372 (citations omitted). Martin 's holding is dispositive of Clay's constitutional claim; accordingly, we hold that the district court did not err in allowing Luna's statement to be admitted.
 
 III.
 
 11
 The next issue that Clay raises is whether there was sufficient evidence to support his jury conviction. This question is normally reviewed under a standard which asks "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Swidan, 888 F.2d 1076, 1080 (6th Cir.1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Here, however, as the government points out, Clay did not preserve the issue for appeal by making a motion for a judgment of acquittal. In order to properly preserve the issue of sufficiency of the evidence, a defendant must make such a motion at the close of all evidence, id., or within seven days of the discharge of the jury, Fed.R.Crim.P. 29(c). Clay did neither. J.A. at 404-06. Therefore, his appeal of this issue is reviewed under a much stricter standard; unless the record shows a "manifest miscarriage of justice," the evidence will be deemed sufficient. Swidan, 888 F.2d at 1080 (quoting United States v. Faymore, 736 F.2d 328, 334 (6th Cir.), cert. denied, 469 U.S. 868 (1984)).
 
 
 12
 Clay alleges that the only evidence supporting a conspiracy was the out-of-court statement discussed in part II, supra, and points out that the drugs and weapons in evidence were found in an apartment and a car, neither of which belonged to him. Even under the Swidan standard, we would have to view all the evidence in the light most favorable to the government. Repair slips linked Clay to the car containing cocaine. The officers found male clothing in the apartment. A weapon was on the floor in front of Clay when the police officers entered the apartment. On these facts, we cannot find for Clay under the standard articulated in Swidan. A fortiori, we find nothing in the record indicating that the more stringent manifest-miscarriage-of-justice standard has been met. Thus, we find that the evidence supported the jury verdict.
 
 IV.
 
 13
 The final issue that this court has been asked to consider is whether the trial court erred in finding Clay's prior state felony convictions constitutionally valid for purposes of enhancing his sentence under the Armed Career Criminal Act ("ACCA"), which is codified in relevant part at 18 U.S.C. Secs. 921, 922, 924 (1988).[2] Section 924(e) authorizes the government to seek enhanced sentencing where the criminal offender is in violation of 18 U.S.C. Sec. 922(g)(1) (a convicted felon possessing a firearm), and has three previous felony convictions. Pursuant to 18 U.S.C. Sec. 921(a)(20), a conviction which has been set aside is not to be counted under Sec. 924(e)(1). Clay urges us to hold that two prior state court convictions, for burglary and armed robbery in Tennessee, are constitutionally invalid and were, therefore, improperly used in calculating his federal sentence. No court has ruled these convictions invalid prior to this proceeding.
 
 
 14
 The Supreme Court has recently held that in a federal sentencing proceeding a defendant may not collaterally attack a prior state conviction that is being used to enhance his sentence under the ACCA. Custis v. United States, 114 S.Ct. 1732 (1994). The only exception to this rule is that an indigent defendant may mount such an attack on the grounds that the state conviction resulted from an action that violated his Sixth Amendment right to appointed counsel. Id. Claims that one was denied effective assistance of counsel, that one's guilty plea was not knowingly and intelligently made, or that one was not adequately advised of one's rights with respect to trial proceedings, are not available grounds for attack. Id. at 1738.
 
 
 15
 With regard to the enhancement of Clay's federal sentence under the ACCA, Custis is controlling. Under Custis, Clay's claim that his guilty pleas to the burglary and armed robbery charges in state court were not voluntarily and intelligently made is unavailing in this proceeding. Furthermore, the record in this case indicates that Clay was represented by counsel when he pled guilty in state court. Therefore, under Custis, Clay may not attack his prior state convictions in this proceeding.[3]
 
 V.
 
 16
 For the foregoing reasons we AFFIRM the decision of the district court.
 
 
 
 [1]
 We note that there is a different standard for determining whether an error was harmless when the error is "of constitutional dimension." Martin, 897 F.2d at 1372. As will be discussed immediately below, however, this issue does not implicate a constitutional violation
 
 
 [2]
 The determination of this issue by this court was initially delayed when the issue was reserved for en banc consideration along with United States v. McGlocklin, 962 F.2d 551 (6th Cir.), reh'g, en banc, granted, (6th Cir. July 21, 1992), and United States v. Landrum, No. 91-5324. After the en banc court rendered its decision in United States v. McGlocklin, 8 F.3d 1037 (Sept. 17, 1993), it remanded the reserved issue in Clay to the district court for a determination of the constitutionality of Clay's state court convictions. We then delayed our review of this issue, as well as the other issues in Clay that remained before this court, until the Supreme Court issued an opinion in Custis v. United States, 988 F.2d 1355 (4th Cir.), cert. granted, 114 S.Ct. 299 (1993)
 
 
 [3]
 Clay may, however, attack his state convictions through federal habeas review. Custis, 114 S.Ct. at 1739. If he successfully invalidates a state conviction through which his federal sentence was enhanced, he may then attack the enhancement of his federal sentence. Id
 The extent to which the Supreme Court's holding in Custis overrules our recent en banc decision in United States v. McGlocklin, 8 F.3d 1037 (1993), need not be discussed in this case. Clay's federal sentence was enhanced pursuant to Sec. 924(e)(1) of the ACCA, just as Custis' was. McGlocklin's federal sentence was enhanced pursuant to the career offender provision of the United States Sentencing Guidelines, U.S.S.G. Sec. 4B1.1. Custis is thus directly on point, while McGlocklin is not. Consequently, although Custis may well have limited the use of our approach in McGlocklin for reviewing federal sentences enhanced pursuant to U.S.S.G. Sec. 4B1.1, that issue need not be addressed here.